State of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Jimmie Davison, Defendant-Appellant.

Supreme Court

*No. 01–0826–CR. Oral argument December 4, 2002.—Decided July 3, 2003.*

2003 WI 89

(Also reported in 666 N.W.2d 1.)

For the plaintiff-respondent-petitioner the cause was argued by *Diane M. Welsh,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Keith A. Findley,* Criminal Appeals Project, University of Wisconsin Law School, Madison.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *State v. Davison,* 2002 WI App 109, 255 Wis. 2d 715, 647 N.W.2d 390, which reversed the judgment of the Kenosha County Circuit Court, following Jimmie Davison's (Davison) negotiated guilty plea to one count of aggravated battery, one count of special circumstances battery (battery by prisoner), and one count of threats to injure, all as a repeater. The court of appeals concluded that the aggravated battery and battery by prisoner punishments were multiplicitous, in violation of Davison's double jeopardy rights under the United States and Wisconsin Constitutions. *Id.,* ¶ 20.

¶ 2. Two issues are presented for review. First, does a criminal defendant who pleads guilty to several crimes in a negotiated plea agreement waive the right to raise a multiplicity claim against one of the resulting convictions? Second, did the circuit court err in entering a judgment of conviction for one count of aggravated battery and one count of battery by prisoner on the facts of this case? More specifically, did the legislature intend in Wis. Stat. § 939.66(2m) (1999–2000)[1] to prohibit conviction for both aggravated battery under Wis. Stat. § 940.19(6) and battery by prisoner under Wis. Stat. § 940.20(1) in the prosecution of a single act?

¶ 3. We hold that the legislature did not clearly intend in § 939.66(2m) to bar convictions for both aggravated battery under § 939.19(6) and battery by prisoner under § 940.20(1) in a single prosecution aris-

_____

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 volumes unless otherwise indicated.

ing out of a single act. When the broad language of § 939.66(2m) is viewed in its full context, considering its legislative history as well as the different harms addressed by different battery statutes, we conclude that § 939.66(2m) was intended to address specific problems pertaining to § 940.19 and not intended to prohibit cumulative punishments from convictions under the two battery statutes.

¶ 4. Davison's convictions for both aggravated battery and battery by prisoner were in conformity with legislative intent and thus did not violate his due process right against multiplicitous punishments. Because we conclude that Davison's multiplicity objection fails on the merits, we decline to decide whether, by pleading guilty, he waived his right to raise this claim.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5. The facts in this case are taken from the criminal complaint. In 1997, Jimmie Davison was an inmate at the Kenosha Correctional Center, serving a 12–year sentence for first-degree sexual assault. During the day, he was assigned to a work release program at a farm in Franksville. On November 11, 1997, Davison arranged for his wife to meet him for lunch at his work site. When Mrs. Davison arrived at the grounds about noon, Davison got into her car and instructed her to drive to a remote area of the farm and park inside an isolated shed-type building. Once there, he pushed his food aside and began making sexual advances, which Mrs. Davison rejected.

¶ 6. Davison became very angry when his wife drew away. He grabbed her around the neck with both hands, pulling her face close to his. For the next 45 minutes or so, Davison intermittently choked her, at-

151

tempted to kiss or grope her, pulled up her dress, and screamed at her when she resisted him. Mrs. Davison told him that he was "really hurting" her and later told police that she felt sure that Davison was going to kill her. When she broke free and fled from the car, Davison caught her and forced her back into the shed and car. He continued to choke her. She said she had a hard time breathing and was afraid Davison would break her neck or jaw because his grip was so tight. Later, witnesses saw evidence of black and blue marks on Mrs. Davison's arm and of bruises, scratches, and bleeding around her neck.

¶ 7. At approximately 1:00 p.m., Mrs. Davison was able to persuade her husband that he would be in trouble if he got back late from lunch, and he drove the car back to the work area. Before exiting the car, however, Davison suddenly, violently punched the left side of Mrs. Davison's head. She had a black eye for approximately two weeks. A physician later noted bruises and tenderness around her eye, as well as handprints around both of Mrs. Davison's ears and under her jaw.

¶ 8. Mrs. Davison told police that one reason she visited her husband was that he had agreed to a divorce as soon as he got out of prison but had promised to fight her "all the way" if she filed while he was still incarcerated. When she visited him on a second occasion, February 8, 1998, with their two children, Davison threatened to kill her if she filed for divorce. He bluntly declared that he had "set a plan in motion" to have her killed within three days if she tried to break up their family.

¶ 9. On June 26, 1998, the Kenosha County District Attorney's Office filed a criminal complaint reciting these facts and charging Davison with one count

each of kidnapping,[2] false imprisonment,[3] and aggravated battery under Wis. Stat. § 940.19(6),[4] all as a repeater under Wis. Stat. § 939.62(1)(b). These charges related to the November 11, 1997, incidents. In addition, the complaint contained one count of threats to injure under Wis. Stat. § 943.30(1), as a repeater, based on the separate February 8, 1998, incident. After Davison waived his preliminary hearing, the prosecutor added a count of special circumstances battery (battery by prisoner) under Wis. Stat. § 940.20(1),[5] as a repeater, to the information. This additional count was based on the events of November 11.

¶ 10. In response to the added count, Davison filed a motion claiming that the two battery charges were multiplicitous under Wis. Stat. § 939.66(2m)[6] and violated the constitutional prohibition against double

---

[2] Contrary to Wis. Stat. § 940.31.

[3] Contrary to Wis. Stat. § 940.30.

[4] Wisconsin Stat. § 940.19(6) provides in the relevant portion: "Whoever intentionally causes bodily harm to another by conduct that creates a substantial risk of great bodily harm is guilty of a Class D felony."

[5] Wisconsin Stat. § 940.20(1) provided, at the times relevant to this case: "Battery by prisoners. Any prisoner confined to a state prison or other state, county or municipal detention facility who intentionally causes bodily harm to an officer, employee, visitor or another inmate of such prison or institution, without his or her consent, is guilty of a Class D felony." Wis. Stat. § 940.20(1).

[6] Wisconsin Stat. § 939.66(2m) provides:

Conviction of included crime permitted. Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

. . . .

153

jeopardy. After a hearing, Kenosha County Circuit Judge David M. Bastianelli denied Davison's motion, finding that the charges were not multiplicitous or in violation of double jeopardy.

¶ 11. Thereafter, Davison entered a negotiated plea, agreeing to plead guilty to aggravated battery as a repeater, battery by prisoner as a repeater, and threatening to injure as a repeater. For its part, the State agreed to dismiss, but read-in, the charges for kidnapping as a repeater and false imprisonment as a repeater. The plea bargain did not incorporate any provision forbidding Davison from making a multiplicity or double jeopardy claim on appeal.

¶ 12. After accepting the guilty plea, the circuit court sentenced Davison to six years in prison for aggravated battery, five years to be served consecutively for battery by prisoner, and another five years to be served consecutively for the threats to injure. Davison appealed. During the briefing stage of his appeal, he complained that his appointed counsel failed to adequately consult with him and respond to his inquiries. The court of appeals granted Davison's counsel's motion to withdraw, directed the public defender to appoint new counsel, and then granted additional time for filing a postconviction motion and appeal.

¶ 13. In early 2001 Davison's new counsel filed a postconviction motion reasserting the multiplicity and double jeopardy claim, as well as other claims not relevant to this appeal. The circuit court again denied the multiplicity and double jeopardy claim, finding that,

(2m) A crime which is a less serious or equally serious type of battery than the one charged.

while the claim might have merit, the issue had been waived by Davison's guilty plea. Davison again appealed.

¶ 14. In reversing the circuit court, the court of appeals rejected the State's contention that Davison had waived his multiplicity claim by pleading guilty to the charges. *Davison,* 255 Wis. 2d 715, ¶ 13. The court characterized Davison's claim as being one of double jeopardy and observed that double jeopardy claims are not governed by the guilty plea waiver rule. *Id.,* ¶ 12. The court also concluded that, while aggravated battery and battery by prisoner are offenses that are different in law, § 939.66(2m) applies to all battery statutes, including those outside of § 940.19. *Id.,* ¶¶ 18, 20. Therefore, the court said, Davison could not be convicted of both § 940.19(6) and § 940.20(1), and the court remanded the case to determine the appropriate remedy under *State v. Robinson,* 2002 WI 9, 249 Wis. 2d 553, 638 N.W.2d 564. *Id.,* ¶ 25. The State petitioned for review, which we granted.

## II. STANDARD OF REVIEW

¶ 15. This case presents several questions of law. Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo. *State v. Anderson,* 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998). Whether a multiplicity violation exists in a given case, which requires a determination of legislative intent, is a question of law subject to independent appellate review. *See State v. Multaler,* 2002 WI 35, ¶ 52, 252 Wis. 2d 54, 643 N.W.2d 437.

## III. CONSTITUTIONAL ANALYSIS

A. Double Jeopardy

¶ 16. The State seeks clarification of the analysis to be employed in multiplicity claims, including a discussion of multiplicity's relationship to double jeopardy. Twenty years ago, in an opinion by then-Justice Abrahamson, this court observed that:

> Although the federal constitutional guarantee against double jeopardy has "its roots in antiquity," it is "one of the least understood . . . provisions of the Bill of Rights" and the holdings of the United States Supreme Court can "hardly be characterized as models of consistency and clarity." *Whalen v. United States,* 445 U.S. 684, 699–700 (1980) (Rehnquist, J., dissenting). *See also* Westen and Drubel, *Toward a General Theory of Double Jeopardy,* 1978 The Supreme Court Review 81, 82.

*State v. Bohacheff,* 114 Wis. 2d 402, 406–07, 338 N.W.2d 466 (1983). In the ensuing years, this court has wrestled repeatedly with the proper principles to apply to claims of multiplicity and double jeopardy.[7]

¶ 17. The Fifth Amendment to the United States Constitution reads in part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Article I, § 8(1) of the Wisconsin Constitution provides in part that "no person for the same offense may be twice put in jeopardy of punishment . . . ."

---

[7] For example, see *State v. Sauceda,* 168 Wis. 2d 486, 493 n.8, 496 n.10, 485 N.W.2d 1 (1992), and compare the majority opinion of Justice Callow with the dissenting opinion of then-Justice Abrahamson, 168 Wis. 2d at 501–508 (Abrahamson, J., dissenting).

██

¶ 18. Our tradition is to view these provisions as identical in scope and purpose. *Day v. State,* 76 Wis. 2d 588, 591, 251 N.W.2d 811 (1977). Consequently, this court accepts decisions of the United States Supreme Court as controlling interpretations of the double jeopardy provisions of both constitutions. *State v. Lechner,* 217 Wis. 2d 392, 401 n.5, 576 N.W.2d 912 (1998) (citing *Day,* 76 Wis. 2d at 591, and *State v. Calhoun,* 67 Wis. 2d 204, 220, 226 N.W.2d 504 (1975)); *see also State v. Tappa,* 127 Wis. 2d 155, 161, 378 N.W.2d 883 (1985) (citing cases).

██

¶ 19. The United States Supreme Court has stated that the Double Jeopardy Clause provides three separate protections. "It protects against a second prosecution for the *same offense* after acquittal. It protects against a second prosecution for the *same offense* after conviction. And it protects against multiple punishments for the *same offense.*"[8] *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969) (emphasis added). This summary has been quoted or paraphrased many times by this court.[9] It does not apply to cases in which a person was never put in "jeopardy" or in which the person is properly subject to retrial.

---

[8] To support this statement, the Supreme Court cited *Ex parte Lange,* 18 Wall. 163 (1873); *United States v. Benz,* 282 U.S. 304, 307 (1931); *United States v. Sacco,* 367 F.2d 368 (2d Cir. 1966); *United States v. Adams,* 362 F.2d 210 (6th Cir. 1966); and *Kennedy v. United States,* 330 F.2d 26 (9th Cir. 1964). Each of these five cases involves a second sentence or an amended sentence imposed after a first sentence was vacated or corrected.

[9] *See, e.g., State v. Trawitzki,* 2001 WI 77, ¶ 20, 244 Wis. 2d 523, 628 N.W.2d 801; *State v. Derango,* 2000 WI 89, ¶ 26, 236

¶ 20. Under this analytical framework, the first two protections involve "a second prosecution." The third protection involves a single prosecution. All three protections implicate "the same offense."

¶ 21. Over the years, courts have struggled with the concept of "the same offense." The seminal case in this regard is *Blockburger v. United States,* 284 U.S. 299 (1932). Blockburger was charged with five offenses for unlawfully selling drugs. A jury found him guilty of three. The three charges were variations on two sales of a particular drug to the same purchaser. The Court had no difficulty concluding that sales made on consecutive days did not constitute "a single offense" or a "single continuing offense." *Blockburger,* 284 U.S. at 301–03.[10] In this facet of the case, the Court pointed to separate acts to distinguish the offenses. Two offenses were committed.

¶ 22. More significant for our purposes, the Court addressed a second claim made by the defendant, "that the sale charged in [one] count as having been made not from the original stamped package, and the same sale [charged in a second count] as having been made not in pursuance of a written order of the purchaser, *constitute but one offense for which only a single penalty lawfully may be imposed." Id.* at 301 (emphasis added). The court addressed this second claim as follows:

Each of the offenses created requires proof of a

Wis. 2d 721, 613 N.W.2d 833; *State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992); *State v. Rabe,* 96 Wis. 2d 48, 64, 291 N.W.2d 809 (1980).

[10] The Court stated: "[T]he first sale had been consummated, and the payment for the additional drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery." *Blockburger v. United States,* 284 U.S. 299, 301 (1932).

different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres v. United States,* 220 U.S. 338, 342 [1911], and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Commonwealth,* 108 Mass. 433 [1871]: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." . . . Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed.

*Id.* at 304. For this second facet of the case, there was only one act, but it violated two statutes, each of which required proof of a different element.

¶ 23. There is no reference in *Blockburger* to the Double Jeopardy Clause of the Fifth Amendment. There is no direct reference to "double jeopardy" in any context, or to "cumulative punishment." The Court observed that "each offense is subject to the penalty prescribed; and if that be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction." *Blockburger,* 284 U.S. at 305. However, the opinion cites *Gavieres v. United States,* 220 U.S. 338 (1911), which involved a 1902 Act of Congress that read: "No person, for the same offense, shall be twice put in jeopardy of punishment." *Id.* at 341 (citing section 5 of the Act of Congress of July 1, 1902, 32 Stat., c 1369, 691). In addition, the Court affirmed a decision of the Court of Appeals, *Blockburger v. United States,* 50 F.2d 795 (7th Cir. 1931), in which the dissent-

ing judge wrote: "I do not think the penalty section of the statute contemplates such double punishment for the same transaction." *Id.* at 799 (Alschuler, J., dissenting). Thus, the Court could not have been oblivious to the implications of its decision for future cases.

¶ 24. The "elements only test" articulated in *Blockburger* has frequently been used to aid courts in determining whether a charge is "the same offense" for purposes of any of the protections embodied in the Double Jeopardy Clause.[11] *United States v. Dixon,* 509 U.S. 688, 696 (1993). Because the *Blockburger* test sometimes produces unsatisfactory results, however, it is "now seen as simply a rule of construction creating a rebuttable prescription of sameness." Akhil Reed Amar, *Double Jeopardy Law Made Simple,* 106 Yale L. Rev. 1807, 1819 (1997) (citing *Garrett v. United States,* 471 U.S. 773, 778–79 (1985); *Ohio v. Johnson,* 467 U.S. 493, 499 n.8 (1984); *Missouri v. Hunter,* 459 U.S. 359, 366–67 (1983)); *see also Albernaz v. United States,* 450 U.S. 333, 337 (1981); *Whalen v. United States,* 445 U.S. 684, 691 (1980); *Iannelli v. United States,* 420 U.S. 770, 785 n.17 (1975).

¶ 25. The impact of a judicial determination that a charge is the same offense under the *Blockburger* test appears to depend to some extent upon whether the charge comes in a "second prosecution" or in a single, first prosecution. *See Brown v. Ohio,* 432 U.S. 161, 165 (1977); *Bohacheff,* 114 Wis. 2d at 407 n.5; Peter Westen

[11] In *Rutledge v. United States,* 517 U.S. 292, 297 (1996), the Court stated: "For over half a century we have determined whether a defendant has been punished twice for the 'same offense' by applying the rule set forth in *Blockburger v. United States,* 284 U.S. 299, 304 (1932)." The *Blockburger* test is used also to determine "sameness" for situations involving successive prosecutions. *Brown v. Ohio,* 432 U.S. 161, 168 (1977).

& Richard Drubel, *Toward a General Theory of Double Jeopardy, in 1978 The Supreme Court Review* 121 n.188 (Philip B. Kurland & Gerhard Casper eds., 1979).

> It is important to distinguish here between the constitutional standards for multiple punishment and the distinct standards for a multiple prosecution. Although the Blockburger Rule operates as nothing more than a rebuttable presumption for purposes of multiple punishment, it may have a stricter and more rigid application in the context of multiple prosecution.

Westen & Drubel, *supra,* at 121–22 n.188. The Court appears *less* tolerant of prosecuting the same offense in a second prosecution.

■

¶ 26. If the same offense is involved in a single prosecution, we look to whether the same offense is part of: (1) a "second sentence" challenge, (2) a unit-of-prosecution challenge, or (3) a cumulative punishments challenge, as we have in the present case. *See Whalen,* 445 U.S. at 702–705 (Rehnquist, J., dissenting) (describing the three "strands" of "multiple punishment" precedent) (citing cases).

¶ 27. Before discussing "punishment," it should be noted that the Supreme Court has said that the Double Jeopardy Clause does not prohibit the State "from *prosecuting* [a defendant] for [ ] multiple offenses in a single prosecution," even in situations where it could not impose cumulative punishments for the same offense. *Johnson,* 467 U.S. at 500 (emphasis added). The *Johnson* case distinguishes *prosecution* on overlapping charges for the same offense from *punishment* on those charges for the same offense and explains that prosecution does not equal punishment.

¶ 28. Looking then solely to cumulative punishments imposed in a single prosecution for the same offense, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366 (1983). "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8; *see also Garrett v. United States,* 471 U.S. 773, 779 (1985).

¶ 29. As noted above, the United States Supreme Court summarized the double jeopardy protections as including "multiple punishments for the same offense." *Pearce,* 395 U.S. at 717. For this proposition, the Court cited only cases involving a second sentence imposed by the court. *Id.*[12] Hence, uncertainty has developed whether the prohibition against "multiple punishments for the same offense" can be reconciled with the Court's conclusion that a legislative body may approve cumulative punishments for the same offense, even when the offense is identical in law and fact.[13]

---

[12] *See also Whalen v. United States,* 445 U.S. 684, 703 (1980) (Rehnquist, J., dissenting) ("As is borne out by subsequent cases, the Double Jeopardy Clause as interpreted in *Ex parte Lange* prevents a sentencing court from increasing a defendant's sentence for any particular statutory offense, even though the second sentence is within the limits set by the legislature.").

[13] Justice Antonin Scalia has written that the Double Jeopardy Clause prohibits multiple prosecutions, "not multiple punishments." *Dep't of Revenue of Mont. v. Kurth Ranch,* 511 U.S. 767, 798 (1994) (Scalia, J., dissenting). He cited materials leading to the approval of the Fifth Amendment by Congress in

¶ 30. To address this uncertainty, the Court's rule prohibiting "multiple punishments for the same offense" should be modified in cases involving simultaneous convictions under more than one statute. We read the Supreme Court as saying that when a defendant is convicted under more than one statute for a single act or transaction and the charges constitute "the same offense" because they are identical in law and fact, the Double Jeopardy Clause prohibits cumulative punishments from these convictions *unless the relevant legislative body intended to authorize cumulative punishments.* The "question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen,* 445 U.S. at 688.

██

¶ 31. The Double Jeopardy Clause does not itself restrict a legislature's power to make law. "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, *United States v. Wiltberger,* 5 Wheat. 76, 93 (1820), the question under the Double Jeopardy Clause whether punish-

---

1789, *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 555–56 (1943) (Frankfurter, J., concurring), and *In re Bradley,* 318 U.S. 50, 53 (1943) (Stone, C.J., dissenting), to show that *Ex parte Lange,* 18 Wall. 163 (1873), the source of the protection against "multiple punishments for the same offense," should have been decided solely on due process grounds, thereby avoiding many decades of misinterpretation. *Id.* at 798–800.

A growing sense that the Court has been on the wrong track may explain its explicit recognition that legislative intent overrides multiple punishments for the same offense.

ments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499 (citing *Hunter,* 459 U.S. at 366–68).

¶ 32. In sum, we conclude that the imposition of cumulative punishments from different statutes in a single prosecution for "the same offense" violates double jeopardy when the cumulative punishments are not intended by the legislature. *See Whalen,* 445 U.S. at 689; *see also Rutledge v. United States,* 517 U.S. 292, 297 (1996).

¶ 33. The "same offense" in this specific situation should be an offense identical in law and fact. The imposition of cumulative punishments not authorized by the legislature is a due process violation, not a double jeopardy violation, when the punishments do not spring from the same offense. "The same offense" is the sine qua non of double jeopardy. *State v. Trawitzki,* 2001 WI 77, ¶ 22, 244 Wis. 2d 523, 628 N.W.2d 801; *State v. Grayson,* 172 Wis. 2d 156, 159 n.3, 493 N.W.2d 23 (1992).

B. Multiplicity

¶ 34. The present case involves a claim of "multiplicity." In *State v. Rabe,* 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980), we stated:

> Multiplicity arises where the defendant is charged in more than one count for a single offense. *United States v. Free,* 574 F.2d 1221 (5th Cir. 1978); *State v. Dreske,* 88 Wis. 2d 60, 74, 276 N.W.2d 324 (Ct. App. 1979). As we noted in *State v. George,* 69 Wis. 2d 92, 230 N.W.2d 253 (1975), multiplicitous charges are impermissible, because they violate the double jeopardy provisions of the state and federal constitutions.

164

*Id.* at 815. The *Rabe* statements have been repeated numerous times by this court. *See Anderson,* 219 Wis. 2d at 746; *Grayson,* 172 Wis. 2d at 159; *Tappa,* 127 Wis. 2d at 161. In recent cases, the court has attempted to divide "multiplicity" into categories. *State v. Derango,* 2000 WI 89, ¶ 27, 236 Wis. 2d 721, 613 N.W.2d 833; *Lechner,* 217 Wis. 2d 392, 402 n.6.[14]

¶ 35. Some of our commentary on multiplicity must be re-evaluated in light of the last quarter-century of United States Supreme Court decisions. We know that the *Blockburger* court long ago explained that a single *act* may be an offense against two statutes. *Blockburger,* 284 U.S. at 304. We have learned since *Blockburger* that "the same offense" may give rise to more than one conviction and punishment, if cumulative punishments for the same offense are intended by the legislature. *Rutledge,* 517 U.S. at 303. This is the teaching of *Hunter, Johnson,* and *Garrett.* This court has heretofore acknowledged as much. In *Bohacheff,* the court stated:

> In recent cases the United States Supreme Court has held that as long as the legislative intent is clear the federal Constitution does not bar the legislature from imposing multiple punishments *even if the crimes described by the two statutory provisions* under which two punishments are imposed *are the same offense.*

---

[14] In *State v. Derango,* 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833, the court stated: "Multiplicity challenges . . . usually arise in two different situations: 1) when a single course of conduct is charged in multiple counts of the same statutory offense (the 'continuous offense' cases), and 2) when a single criminal act encompasses the elements of more than one distinct statutory crime." 236 Wis. 2d 721, ¶ 27.

*Bohacheff,* 114 Wis. 2d at 409 n.7 (emphasis added) (citing *Missouri v. Hunter,* 459 U.S. 359 (1983), and *State v. Gordon,* 111 Wis. 2d 133, 137, 330 N.W.2d 564 (1983)).[15] In short, legislative intent to authorize cumulative punishments overrides a total identity of law and fact a la *Blockburger.*

¶ 36. This understanding is significant because this court has said that if offenses "are identical in law and fact, the charges are multiplicitous in violation of the double jeopardy clauses of the federal and state constitutions." *Anderson,* 219 Wis. 2d at 747; *see also Trawitzki,* 244 Wis. 2d 523, ¶ 21; *Derango,* 236 Wis. 2d at ¶ 30. Although this statement is usually true, it is not always true, because the legislature may have intended to authorize cumulative punishments for the same offense.

¶ 37. In situations where the legislature intends to authorize cumulative punishments for the same offense, we may no longer say that the charges are "multiplicitous" or that they violate double jeopardy. Use of the term "multiplicitous" should be limited to situations in which the legislature has not authorized multiple charges and cumulative punishments.

¶ 38. In addition, in discussing multiplicity, a reference to "charges" must be employed carefully, because it is permissible to *charge* more than one count, even if

---

[15] *See also State v. Tappa,* 127 Wis. 2d 155, 173 n.3, 378 N.W.2d 883 (1985) (Abrahamson, J., dissenting) ("[T]he United States Supreme Court held that the dispositive issue in determining whether a court may impose multiple punishments on a defendant in a single trial for violating two statutory provisions (regardless of whether they constitute the same offense) is whether the legislature authorized multiple punishments.").

the state may not punish a defendant on more than one count. *Johnson,* 467 U.S. at 500. In *Bohacheff,* for instance, the state *charged* the defendant with being under the influence of an intoxicant while operating a vehicle, in violation of Wis. Stat. § 940.25(1)(a) (1981–82), and having a blood alcohol concentration of .10 or more while operating a vehicle in violation of Wis. Stat. § 940.25(1)(b) (1981–82). *Bohacheff,* 114 Wis. 2d at 404. The defendant filed a motion to dismiss the complaint on the ground that *charging* him under both sections violated protections against double jeopardy. The circuit court granted the motion. *Id.* at 405. This court reversed, concluding that the complaint did not violate double jeopardy because the statutes subjected the defendant to only one conviction and one punishment. *Id.* This court's ruling was and is consistent with the subsequent Supreme Court decision in *Johnson.*

¶ 39. *Bohacheff* did not describe itself as a multiplicity case, although it would have been a multiplicity case if unauthorized cumulative punishments had been imposed. By contrast, *Rabe,* 96 Wis. 2d 48, did describe itself as a multiplicity case, based upon the charges alone, but it was not. *Rabe* involved four charges of homicide by intoxicated use of a motor vehicle under the same statute, as four persons were killed in an accident caused by the defendant's intoxication. *Id.* at 52. The defendant filed a motion to consolidate the four counts into one count on grounds that the defendant's single act of negligently driving his vehicle while intoxicated could not be *charged* as multiple offenses. The circuit court granted the motion. *Id.* at 52–53.

¶ 40. In vacating the circuit court's dismissal of three counts, this court adopted the "multiplicity" rhetoric employed by the defendant. We cited *United States v. Free,* 574 F.2d 1221, 1224 (5th Cir. 1978), for

the proposition that multiplicity arises where the defendant is charged in more than one count for a single offense. *Rabe,* 96 Wis. 2d at 61. In *Free,* the defendant claimed that his indictment was "multiplicitous" because one count charged him with second-degree murder and a second count charged him with unlawfully conveying a weapon designed to kill an inmate from place to place in a federal correctional institution. *Free,* 574 F.2d at 1224. The court used the *Blockburger* test to dismiss the defendant's claim as meritless, making no reference to double jeopardy in its decision. *Id.* For its definition of "multiplicity," the *Free* court cited *Gerberding v. United States,* 471 F.2d 55, 58 (8th Cir. 1973), another case completely silent on double jeopardy. *Free,* 574 F.2d at 1224.

■■■

¶ 41. Both *Free* and *Gerberding* involved different charges, not multiple counts of the same charge. This made them similar to this case, but different from *Rabe.* As a general proposition, different elements of law distinguish one offense from another when different statutes are charged. Different facts distinguish one count from another when the counts are charged under the same statute.[16]

¶ 42. There is an established methodology for reviewing multiplicity claims. *Trawitzki,* 244 Wis. 2d 523, ¶ 21; *Anderson,* 219 Wis. 2d at 746; *Lechner,* 217 Wis. 2d at 402–03.

---

[16] The *Rabe* and *Anderson* cases may be compared with *State v. George,* 69 Wis. 2d 92, 230 N.W.2d 253 (1975), to illustrate contrasting treatment of multiple counts under the same statute.

¶ 43. First, the court determines whether the charged offenses are identical in law and fact using the *Blockburger* test. *Trawitzki*, 244 Wis. 2d 523, ¶ 21; *Derango* 236 Wis. 2d 721, ¶ 29. If it is determined, using this test, that the offenses are identical in law and fact, the presumption is that the legislative body did not intend to punish the same offense under two different statutes. *Whalen*, 445 U.S. at 692. "Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent." Id.* (emphasis added).

¶ 44. Conversely, if under the *Blockburger* test the charged offenses are different in law or fact, a presumption arises that the legislature did intend to permit cumulative punishments. *See Derango,* 236 Wis. 2d 721, ¶ 30; *Lechner,* 217 Wis. 2d at 407; *Sauceda,* 168 Wis. 2d at 496; *State v. Kuntz,* 160 Wis. 2d 722, 755, 467 N.W.2d 531 (1991). "This presumption can only be rebutted by clear legislative intent to the contrary." *Derango,* 236 Wis. 2d 721, ¶ 30; *Lechner,* 217 Wis. 2d at 407; *Kuntz,* 160 Wis. 2d at 755 (citing *Missouri v. Hunter,* 469 U.S. at 367; *Albernaz,* 450 U.S. at 340).

¶ 45. Second, even if the charged offenses are *not* identical in law and fact, the court must still determine whether the legislature intended multiple offenses to be brought as a single count. *See Anderson,* 219 Wis. 2d at 746. At this juncture, however, it is the defendant's burden to show a clear legislative intent that cumulative punishments are not authorized.

¶ 46. Applying these principles to this case, there is no dispute that the offense of aggravated battery is not identical in law to the offense of battery by prisoner. Consequently, we are not dealing with a potential double jeopardy violation involving "the same offense." The cumulative punishments against the defendant are not "multiplicitous" either, *unless the legislature did not intend to authorize multiple convictions and cumulative punishments for the two battery offenses on these facts.* If the legislature did not intend to authorize multiple convictions and cumulative punishments, Davison has a legitimate due process claim. To evaluate this claim, we must concentrate our focus on legislative intent.

## IV. LEGISLATIVE INTENT

¶ 47. Davison challenges one of his two "battery" convictions on multiplicity grounds, arguing that Wis. Stat. § 939.66(2m) represents a clear expression of legislative intent not to authorize cumulative punishments in his situation. Wisconsin Stat. § 939.66 reads in part as follows:

> Conviction of included crime permitted. Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:
>
> . . . .
>
> (2m) A crime which is a less serious or equally serious type of battery than the one charged.

¶ 48. Davison notes that aggravated battery and battery by prisoner are both Class D felonies. Thus, if measured by the penalty structure, each crime is an

170

"equally serious type of battery."[17] As a result, he argues, Wis. Stat. § 939.66(2m) bars conviction of "[a] crime which is [an] . . . equally serious type of battery than the one charged."

¶ 49. Davison does not dispute that the two offenses are not identical in law. Thus, there is a presumption that the legislature intended to permit punishments for both offenses. The critical issue to be decided, then, is whether Wis. Stat. § 939.66(2m) represents a clear legislative intent to prohibit cumulative punishments on the facts before us, rebutting the presumption to the contrary.

■■

¶ 50. As we seek legislative intent in a multiplicity claim, the court does not stop at the language of the subsection. Instead, we analyze four factors to determine legislative intent: (1) all applicable statutory language; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct. *See Grayson,* 172 Wis. 2d at 160 (citing *Tappa,* 127 Wis. 2d at 165).[18]

---

[17] Reference to the penalty structure is the correct way of determining whether a type of crime is "less or equally serious." *State v. Lechner,* 217 Wis. 2d 392, 410, 576 N.W.2d 912 (1998) (citing *State v. Davis,* 144 Wis. 2d 852, 857, 425 N.W.2d 411 (1988)).

[18] This four-factor test first became part of this court's jurisprudence in *Manson v. State,* 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981). In *Manson,* we were confronted with a unanimous verdict challenge. *Id.* at 419. Before considering the defendant's contention that he was deprived of a unanimous verdict, this court determined whether the armed robbery statute, Wis. Stat. § 943.32(1), defined one offense with alternative means of being committed or two independent offenses.

## A. Statutory Language

¶ 51. Wisconsin Stat. § 939.66 is the second of two sections that appear under the heading "Rights of the Prosecution" in Subchapter V of Chapter 939. The first section, Wis. Stat. § 939.65, is entitled "Prosecution under more than one section permitted." It provides that "if an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." Wis. Stat. § 939.65(1). This section gives a green light to multiple *charges,* which may result in multiple *convictions,* under different statutory provisions.[19]

---

*Id.* In discerning the legislature's intent on this matter, the court adopted a four-factor test previously employed in *United States v. UCO Oil Co.,* 546 F.2d 833 (9th Cir. 1976), and concluded that there was only one legislatively intended offense in § 943.32. *Manson,* 101 Wis. 2d at 422, 428.

The test was first applied to a double jeopardy challenge in *State v. Bohacheff,* 114 Wis. 2d 402, 410, 338 N.W.2d 466 (1983), and was directly incorporated into our multiplicity jurisprudence in *Tappa,* 127 Wis. 2d at 165.

[19] The State may file multiple charges leading to multiple convictions. The comment to Wis. Stat. § 939.65 explains the purpose of the section as follows:

> This section makes clear that there may be prosecution under more than one section for the same conduct. For example, a person may be prosecuted under a general section even though there is a specific section which covers the conduct, or he may be prosecuted under both; a person may be prosecuted for an attempt rather than the completed crime; a person may be prosecuted for a misdemeanor even though some other section may make his conduct a felony.

> This section states a rule of pleading, and does not purport to state the limitations on multiple sentences for the same act or the limitations on multiple convictions and subsequent prosecutions for the same act which may be included in the constitutional

¶ 52. Wisconsin Stat. § 939.66 then speaks of an "included crime":

> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:
>
> (1) a crime which does not require proof of any fact in addition to those which must be proved for the crime charged.

Subsection (1) is a codification of the *Blockburger* test.

¶ 53. In this case, the two battery offenses share only two elements: (1) the defendant caused bodily harm to the victim, and (2) the defendant intended to cause bodily harm to the victim. *Compare* Wis JI—Criminal 1226, *with* Wis JI—Criminal 1228.[20] To prove battery by prisoner, the State must prove four elements that are not included in aggravated battery, namely (1)

---

double jeopardy rule. For some of the limitations which have been incorporated in the code, see sections 339.66, 339.71 and 339.72.

1953 A.B. 100, at 52.

[20] The statutory elements of Wis. Stat. § 940.19(6) are: (1) the defendant caused bodily harm to the victim; (2) the defendant intended to cause bodily harm to the victim; (3) the defendant's conduct created a substantial risk of great bodily harm; and (4) the defendant knew that his or her conduct created a substantial risk of great bodily harm. Wis JI—Criminal 1226. In contrast, the statutory elements of Wis. Stat. § 940.20(1) are: (1) the defendant was a prisoner; (2) the defendant intentionally caused bodily harm; (3) the victim was a visitor to the institution; (4) the defendant caused bodily harm without consent of the victim; and (5) the defendant knew the victim was a visitor of the institution and knew that the victim did not consent to the causing of bodily harm. Wis JI—Criminal 1228.

the defendant was a prisoner; (2) the victim was a visitor to the defendant's institution; (3) the defendant caused bodily harm without the consent of the victim; and (4) the defendant knew the victim was a visitor to the institution and knew that the victim did not consent to the causing of bodily harm. *See* Wis JI—Criminal 1228. To prove aggravated battery under § 940.19(6), the State must prove two elements that are not included in battery by prisoner, namely (1) the defendant's conduct created a substantial risk of great bodily harm; and (2) the defendant knew his conduct created a substantial risk of great bodily harm. *See* Wis JI—Criminal 1226. The marked difference in the elements of the two offenses clearly supports a presumption that the legislature's intent was to permit cumulative punishments.

¶ 54. On the other hand, § 939.66 also provides in subsection (2m) that an included crime includes "a crime which is a less serious or equally serious type of battery than the one charged."

¶ 55. Battery by prisoner is a crime. Wis. Stat. § 940.20(1).

¶ 56. Battery by prisoner is arguably a "type of battery" if "battery" refers to statutory offenses as opposed to physical acts.[21]

¶ 57. Battery by prisoner is an "equally serious type of battery" because both statutory offenses are Class D felonies. *Lechner,* 217 Wis. 2d at 410.

---

[21] If "type of battery" does not refer to statutory offenses, then all the "types of battery" would be covered by Wis. Stat. § 941.19.

¶ 58. Based on the plain language of the subsection, one would normally conclude that the legislature intended that the defendant not be convicted of both crimes.

¶ 59. Supporting this conclusion is the fact that the legislature showed elsewhere in Wis. Stat. § 939.66 that it could write more narrowly than subsection (2m) when it wanted to. For instance, subsection (2r) reads: "A crime which is a less serious type of violation *under s. 943.23* than the one charged." (Emphasis added). Unlike (2m), this subsection confines the analysis of an included crime to a specific statute. *See also* subsection (6c) ("A crime that is a less serious type of violation under s. 940.285 than the one charged."); subsection (6e) ("A crime that is a less serious type of violation under s. 940.295 than the one charged."); subsection (7) ("The crime specified in s. 940.11(2) when the crime charged is specified in s. 940.11(1).").

¶ 60. The text also shows that the legislature has repeatedly evinced a concern about overlapping charges of battery. In Wis. Stat. § 939.66, the legislature addressed battery in subsection (5) ("The crime of attempted battery when the crime charged is sexual assault, sexual assault of a child, robbery, mayhem or aggravated battery or an attempt to commit any of them.") and in subsection (6) ("A crime specified in s. 940.285(2)(b)4. or 5. ['maltreatment' of vulnerable adults] when the crime charged is specified in s. 940.19(2) to (6) [subsections of the battery statute pertaining to substantial bodily harm and great bodily harm]."), 940.225(1), (2) or (3) or 940.30.

¶ 61. Finally, the court provided a supportive interpretation of the statute in a parallel subsection. Wisconsin Stat. § 939.66(2) addresses multiple convictions for homicide and prohibits conviction of "a crime

which is a less serious type of criminal homicide than the one charged." In *Lechner*, 217 Wis. 2d 392, the defendant pled no contest to both second-degree reckless homicide and homicide by intoxicated use of a vehicle when both charges involved the death of a single person. The defendant argued that he could not be convicted twice for killing the same person. In rejecting his claim, the court stated:

> [T]he legislature, by enacting Wis. Stat. § 939.66(2), has specifically addressed the issue of multiple homicide convictions for a criminal act causing a single death. Where a single act of a defendant forms the basis for a crime punishable under more than one statutory provision, Wis. Stat. § 939.66(2) provides that a defendant may not be convicted for two criminal homicides if one is "a less serious type of criminal homicide." The defendant in this case argues that this section "unequivocally" evinces the legislature's intent to allow only one homicide conviction for causing the death of one person. A closer reading of the plain language in Wis. Stat. § 939.66(2), however, establishes just the opposite.
>
> The plain language of Wis. Stat. § 939.66(2) does not prohibit multiple homicide convictions for killing one person. It bars multiple convictions only when one of the homicide convictions is for a "less serious type" of homicide. *Noticeably absent from the prohibitions of Wis. Stat. § 939.66(2) is a bar against multiple homicide convictions when the homicides are "equally serious."*

*Id.* at 407–08 (emphasis added).

¶ 62. We went on to explain that, since the legislature enacted § 939.66(2) as a prohibition against multiple homicide convictions but "limited its application to situations where one homicide conviction is for a less serious type of homicide, we can infer a legislative

intent not to prohibit multiple convictions when the defendant is convicted for equally serious types of homicide." *Id.* at 408.

> The inference that the legislature did not intend to prohibit multiple convictions for "equally serious" homicides is supported by the fact that the statutory provision immediately following Wis. Stat. § 939.66(2) prohibits multiple convictions when one crime is a "less serious *or equally serious type* of battery." Wis. Stat. § 939.66(2m) (emphasis added). . . . [T]he legislature apparently intended to bar multiple convictions for a single act of battery, regardless of the seriousness of the offenses.

*Id.* at 408–09.

¶ 63. This rationale is helpful to Davison. Turning *Lechner* on its head, "we can infer a legislative intent" to prohibit multiple convictions when the defendant is convicted for equally serious types of battery.

¶ 64. In short, Davison is not forced to rely solely on the words in subsection (2m). The words are buttressed by textual analysis and prior case law.

¶ 65. There is, however, another side to the dispute. A literal reading of subsection (2m) of § 939.66 is inconsistent with the general intent of § 939.65, which permits multiple charges under different statutes for a single act and may result in multiple convictions. It is also inconsistent with the test set out in subsection (1) *unless* (2m) is narrowly construed.

¶ 66. In addition, the introductory sentence and several subsections of § 939.66 may be read to apply only to a single charged offense and to a lesser-included offense that is not charged but is later submitted to the jury. Section 939.66 reads:

> Upon prosecution for *a crime,* the actor may be

177

convicted of either *the crime charged* or an included crime, but not both. An included crime may be any of the following:

(1) A crime which does not require proof of any fact in addition to those which must be proved *for the crime charged.*

. . . .

(2m) *A crime which is a less serious* or equally serious type of battery *than the one charged.*

Wis. Stat. § 939.66 (emphasis added).

¶ 67. This plausible reading of the statute could make the statute inapplicable to the present case because, in the present case, both battery statutes *were charged.* As will be seen, the legislative history lends support to this interpretation of the statute.

¶ 68. Alternatively, if subsection (2m) is interpreted to apply to both charged and uncharged crimes, it limits a single act of battery against a single victim to only one "battery" conviction, *regardless of the circumstances.* The reason for this result is that *all* "battery" charges will either be "less serious or equally serious" to one of the charged offenses. There will never be a "more serious" battery charge that could simultaneously be prosecuted. To illustrate, if a police officer visited a correctional institution to interview a prisoner and the prisoner attacked the police officer causing great bodily harm, the prisoner could be charged with only one battery offense under any statute, *if* we adopt the defendant's interpretation of (2m). There is reason to ponder whether the legislature *intended* such a result.

¶ 69. The plain language interpretation of subsection (2m) is also inconsistent with the plain language of subsection (6). Subsection (6) explicitly exempts simple

battery, § 940.19(1), from the prohibition of a simultaneous prosecution and conviction of maltreatment under §§ 940.285(2)(b)4. If subsection (2m) is interpreted to preclude conviction of equally serious "types of battery," the exemption in subsection (6) is rendered meaningless.

¶ 70. As noted in ¶ 56 above, the phrase "type of battery" is subject to different interpretations, depending on whether "battery" refers to a statutory offense or a physical act. If one interprets "type of battery" to refer to the "act" as affected by the actor's state of mind and the seriousness of the resulting injury, then those elements are discussed only in § 941.19.

¶ 71. Finally, the State makes two textual arguments. First, the State notes that subsection (2m) speaks simply of the "unadorned appellation 'battery.'" It adds that only in § 940.19 is the word "battery" applied without referring to the persons who commit the battery or the persons against whom the battery is committed.[22] Therefore, the State contends, reasonable

---

[22] The other Wisconsin statutes that impose punishments for battery committed in special circumstances are Wis. Stat. §§ 940.195 (Battery to an unborn child; substantial battery to an unborn child; aggravated battery to an unborn child), 940.20(1m) (Battery by persons subject to certain injunctions), 940.20(2) (Battery to law enforcement officers and firefighters), 940.20(2m) (Battery to probation, extended supervision and parole agents and aftercare agents), 940.20(3) (Battery to jurors), 940.20(4) (Battery to public officers), 940.20(5) (Battery to technical college district or school district officers and employees), 940.20(6) (Battery to public transit vehicle operator, driver or passenger), and 940.20(7) (Battery to emergency medical care providers). In addition, other particularized battery offenses include Wis. Stat. §§ 940.201 (Battery or threat to witnesses), 940.203 (Battery or threat to judge), 940.205 (Battery or threat to department of revenue employee), and 940.207

doubt exists whether the word "battery" in § 939.66(2m) was intended to apply to the special circumstances batteries created outside of § 940.19.

¶ 72. Second, the State questions whether it is reasonable to apply § 939.66(2m) to the specific battery provisions relating to named actors or victims and to other similar battery provisions in Chapter 940, given the fact that the purpose of these specialized statutes is to enhance the penalties for committing a general battery under § 940.19. The questionable interaction of statutes, the State argues, creates ambiguity as to the legislature's intended scope of § 939.66(2m).

¶ 73. Under § 940.19, the severity of the different offenses is measured by the actor's intent and the seriousness of the injury suffered by the victim. These factors are wholly absent from the special circumstances batteries in §§ 940.20, 940.201, 940.203, 940.205, and 940.207—offenses based on the special status of the actor or the victim of the battery.

¶ 74. To sum up, we think subsection (2m) is ambiguous. Read literally in one way, it is very helpful to the defendant. Read literally in another way, it is inapplicable to the defendant. Read as the defendant wishes it read, it contradicts the principle of §§ 939.65 and 939.66(1) and produces some curious results. Subsection (2m) is not clear enough to resolve the issue of legislative intent.

---

(Battery or threat to department of commerce or department of workforce development employee). Finally, we note that the penalty for burglary is enhanced from a Class C to a Class B felony when a burglar commits a battery while in the burglarized enclosure. *See* Wis. Stat. § 943.10(2)(d).

## B. Legislative History and Context

¶ 75. We turn now to the legislative history and context of Wis. Stat. § 939.66(2m). Both parties and the court of appeals agree that subsection (2m) was created in response to this court's decision in *State v. Richards,* 123 Wis. 2d 1, 365 N.W.2d 7 (1985). We think it is useful, however, to examine the full history of Wis. Stat. § 939.66.

¶ 76. Wisconsin Stat. § 939.66 was created in two steps in the early 1950s as part of the revision of the state criminal code. Chapter 623, Laws of 1953; ch. 696, Laws of 1955. The new text was accompanied by extensive comments. The comment for the section at issue provides in part:

> This section permits conviction of a crime included within the crime charged and states what crimes are included crimes. The reason behind the rule of this section is the state's difficulty in determining before a trial exactly what crime or degree of the crime it will be able upon the trial to prove beyond a reasonable doubt. There is no disadvantage to the defendant in such a rule, *for he is apprised of the charges against him by reason of the fact that the crime charged is broader than the included crime.*
>
> An example of an included crime under subsection (1) is the crime of burglary when the crime charged is aggravated burglary. An example of an included crime under subsection (2) is homicide by reckless conduct when the crime charged is first-degree murder. An example of an included crime under subsection (3) is injury by reckless conduct when the crime charged is battery.

1953 A.B. 100, at 53 (emphasis added).

¶ 77. The clear implication of the comment is that a defendant may be charged with one crime but ultimately convicted of an "included crime"—a lesser included crime *that is not charged*—when the State is unable to prove the more serious crime. In these circumstances, the defendant has no complaint "by reason of the fact that the crime charged is broader than the included crime." *Id.*

¶ 78. In 1985 this court decided *State v. Richards,* 123 Wis. 2d 1, 365 N.W.2d 7 (1985). The question presented in *Richards* was whether simple battery and intermediate battery, as proscribed by the version of Wis. Stat. § 940.19 applicable at that time,[23] were lesser-included offenses of aggravated battery. *Id.* at 2. The court applied the elements-only test articulated in § 939.66(1) and concluded that simple battery and intermediate battery were *not* included offenses of aggravated battery, because the two "lesser" crimes had different elements, requiring proof of nonconsent,

---

[23] The version of Wis. Stat. § 940.19 applicable to the *Richards* case provided:

> 940.19 Battery; aggravated battery. (1) Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class A misdemeanor.
>
> (1m) Whoever causes great bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class E felony.
>
> (2) Whoever causes great bodily harm to another by an act done with intent to cause great bodily harm to that person or another with or without the consent of the person so harmed is guilty of a Class C felony.

*State v. Richards,* 123 Wis. 2d 1, 2 n.2, 365 N.W.2d 7 (1985) (quoting Wis. Stat. § 940.19 (1979–80)).

whereas aggravated battery did not. *Id.* at 4, 6. As a result, we affirmed the circuit court's decision refusing to submit either simple battery or intermediate battery to the jury as lesser-included offenses of aggravated battery. *Id.* at 4.

¶ 79. While the *Richards* court felt bound by the statutory elements laid out in § 940.19, it nevertheless agreed with the defendant that common sense dictated that the two lower degrees of battery be lesser-included offenses of aggravated battery. *Id.* at 12. Therefore, the court explained how the legislature could rectify the situation:

> Simply because the legislature could, and arguably should, have delineated the statutory elements differently does not permit this court to rewrite the elements of the crime by judicial fiat. It is up to the legislature, if it concludes that the lower battery offenses should be lesser included offenses, to do so within the statutory framework of sec. 939.66 and sec. 940.19, Stats. The legislature could remedy the situation by adding a subsection to sec. 939.66, analogous to sec. 939.66(2), to provide that an included crime may be a crime which is a less serious type of battery than the one charged. Alternately, the legislature could remove victim non-consent as an element of simple and intermediate battery and make consent a defense to sec. 940.19(1) and (1m) but not (2).

*Id.* at 12–13 (footnote omitted). The alternatives presented by the Court offered the legislature two options to eliminate the peculiarity of simple and intermediate battery not being lesser-included offenses of aggravated battery. The court made no mention of the effect these proposals might have on cumulative punishments for batteries prosecuted under both § 940.19 and one of the special circumstances battery offenses defined elsewhere in Chapter 940.

¶ 80. Two months after our decision in *Richards,* the Assembly introduced 1985 Assembly Bill 359, which ultimately became 1985 Wisconsin Act 144 and created § 939.66(2m). *See* Legislative Reference Bureau Drafting File for 1985 Wis. Act 144. The original bill was drafted to follow the *Richards* option of removing victim nonconsent as an element of simple and intermediate battery and making consent a defense to §§ 940.19(1) and (1m) but not to aggravated battery under § 940.19(2). *Id.* This revision would have affected *only* § 940.19.

¶ 81. The Legislative Reference Bureau's original analysis of 1985 Assembly Bill 359 explains that the bill's focus was on the degrees of general battery contained in § 940.19, not the special circumstances batteries located in Chapter 940. According to the Legislative Reference Bureau:

> Under present law, Wisconsin prohibits battery (intentionally causing bodily harm) under a number of different statutes. The potential penalties vary depending on the circumstances surrounding the act, the actor, the victim and the harm suffered by the victim. *This bill affects the first 2 levels of battery.* Under present law, the first level of battery (ordinary battery) involves intentionally causing bodily harm to a victim without the victim's consent. The 2nd level of battery involves causing great bodily harm by an act done with intent to cause bodily harm without the consent of the victim. The bill removes the element of "no consent" from both of these crimes.

Legislative Reference Bureau Drafting File for 1985 Wis. Act 144, *Analysis by the Legislative Reference*

*Bureau* of 1985 A.B. 359 (emphasis added).[24] While alluding to the existence of special circumstances batteries, the bill analysis specifically stated that the bill would only affect "the first two levels of battery," meaning simple and intermediate battery in § 940.19.

¶ 82. In the end, the legislature approved the other option proposed by the *Richards* court. It created subsection (2m) and declared a "less serious type of battery than the one charged" to be an included offense. Although this option did not unambiguously limit the scope of change to § 940.19, there is nothing in the legislative history of § 939.66(2m) to indicate that this second option was intended to achieve different policy objectives from the first option. Rather, it appears that the two options were anticipated to have the same narrow substantive effect. This court has previously recognized that the purpose of § 939.66(2m) was to rectify the § 940.19 problem highlighted in *Richards*. *See State v. Vassos,* 218 Wis. 2d 330, 338 n.8, 579 N.W.2d

---

[24] The drafting record for 1985 Wis. Act 144 reveals that considerable attention was given to how to incorporate a defense of consent into the simple and intermediate battery statutes. As originally drafted, the bill created a defense of consent specifically to persons who were willing participants in athletic events and when the harm suffered was a reasonably foreseeable hazard of the practice or competition. *See* Legislative Reference Bureau Drafting File for 1985 Wis. Act 144. While there is nothing in the drafting record that explains what animated the legislature to forgo this route, it is reasonable to infer that concerns existed regarding either the interpretative confusion that might develop from this athletic-event exception or fear that the consent provision would be under-inclusive.

35 (1998). We find no public record in the amendment revealing an intent to apply § 939.66(2m) beyond § 940.19.[25]

¶ 83. In 1994 the legislature added the phrase "or equally serious" to subsection (2m). 1993 Wis. Act 441, § 2. The history of this addition also is instructive.

¶ 84. 1993 Assembly Bill 879, relating to battery and providing penalties, was introduced originally to make several changes to § 940.19. The bill passed the Assembly with no change to § 939.66(2m). According to a February 16, 1994, memorandum from Assistant Attorney General Sally Wellman to Andy Cohn, Executive Assistant to Attorney General James Doyle, a survey of state prosecutors did not like the Assembly bill.[26] Wellman wrote:

> Some questioned whether a "middle" form of battery is really needed. They also made some valid suggestions regarding my draft, questioning which batteries will now be lesser included offenses, whether my proposed "middle" form will encompass too much of what is arguably only battery, whether some parts of the definition are too vague (i.e. multiple bruising) and raising the issue of which if any degrees of battery should have a "without consent" element. Given the difficulty of the issue and the number of subissues it raises, my preference would be [ ] to take some more time with this. If we can get it pulled out of this session so that we can get input from a wider range of people on a second draft, we will end up with a better product. If that is not

---

[25] We observe that the Comment sections to the model Wisconsin Jury Instructions for battery offenses, Wis JI—Criminal 1220 through 1244, make no mention of the effect of § 939.66(2m) *except* in those instructions pertaining to the battery offenses established in § 940.19.

[26] The Wellman memorandum is part of the Legislative Council file on 1993 A.B. 879.

possible, and we still need to amend AB 879 now, I suggest the following revisions:

¶ 85. Wellman then (1) proposed a new definition of "substantial bodily harm," (2) rewrote § 940.19, and (3) proposed an amendment to § 939.66(2m) to read: "A crime which is a less serious or *equally serious type* of battery than the one charged." *Id.* at 2 (emphasis added). With only grammatical modifications to the definition, all these changes were adopted by the legislature.

¶ 86. In truth, then, all critical language in the 1994 legislation was drafted by the Wisconsin Department of Justice, with no indication that the language was intended to interact with any statute beyond § 940.19. Rather, the new language in (2m) appears to reflect the changes proposed for § 940.19.

¶ 87. Under the Department's 1994 proposal, § 940.19 was projected to contain one Class C felony, three Class D felonies, one Class E felony, and one Class A misdemeanor. Without the Wellman amendment, § 939.66(2m) would not have prohibited simultaneous convictions of three Class D felonies under subsections (3), (4), and (6) of proposed § 940.19.

¶ 88. We acknowledge that the legislature could have had a different view. The original bill analysis, before the amendment, begins with the statement that:

> Under current law, battery is punishable by a range of crime classifications that vary from Class A misdemeanor to Class C felony depending on the type of harm the victim suffers, the type of harm the offender

intends to inflict and special circumstances such as when the victim is a peace officer.[27]

Bill Analysis to 1993 Assembly Bill 879.

¶ 89. This identical statement appears in two Legislative Council Staff memoranda written respectively to the chairs of the Assembly and Senate legislative committees that considered Assembly Bill 879. *See* Staff Memorandum to Representative Wayne W. Wood from Shaun Haas, Senior Staff Attorney, Wisconsin Legislative Council, February 2, 1994, at 1; Staff Memorandum to Senator Joanne Huelsman, from Don Salm, Senior Staff Attorney, Legislative Council, March 14, 1994, at 1. The two memoranda were accompanied by the texts of both §§ 940.19 and 940.20.

¶ 90. Nonetheless, we believe the stronger inference to be drawn from the legislative history is that the legislature intended to apply subsection (2m) only to § 940.19 and did not intend to prevent cumulative punishments for a special circumstances battery.

## C. Nature of the Proscribed Conduct

¶ 91. The third factor, the nature of the proscribed conduct, requires an examination of the policy considerations embedded in the various battery statutes.

¶ 92. Wisconsin Stat. § 940.19 lays out gradations of victim injury and offender intent and assigns punishment in accord with the severity of these factors.

---

[27] Note the use of the word "type" in the Legislative Reference Bureau analysis and compare the phrase "type of battery" as it existed in Wis. Stat. § 939.66(2m) before and after the 1994 amendment.

This pattern is perfectly illustrated by the escalating definitions of "bodily harm," "substantial bodily harm," and "great bodily harm":

> (1) "Bodily harm" means physical pain or injury, illness, or any impairment of physical condition. Wis. Stat. § 939.22(4).

> (2) "Substantial bodily harm" means bodily injury that causes a laceration that requires stitches; any fracture of a bone; a burn; a temporary loss of consciousness, sight or hearing; a concussion; or a loss or fracture of a tooth. Wis. Stat. § 939.22(38).

> (3) "Great bodily harm" means bodily injury which creates a substantial risk of death, or which causes permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury. Wis. Stat. § 939.22(14).

¶ 93. By contrast, the special circumstances batteries in Chapter 940 enhance the penalty that may be imposed for bodily harm because of the status of the offender or the status/vulnerability of the victim. Plainly, the legislature wanted more severe punishment for intentional bodily harm to a law enforcement officer, a fire fighter, a judge, or a juror, than to the ordinary participant in a bar fight.

¶ 94. This objective will be achieved when the offender intends and causes only "bodily harm" and is charged under a special circumstances battery. However, Davison's interpretation of the statute would permit an offender to be charged with only one battery, regardless of the aggravating circumstances. *See* ¶ 68 above for discussion. This would mean, for instance, that an offender who causes substantial bodily harm to a woman by an act done with intent to cause bodily

harm, will suffer no incremental punishment by virtue of the fact that the offender is under court injunction and the woman is the person who sought the injunction. Both §§ 940.19(2) and 940.20(2) are Class E felonies. Likewise, an offender who causes substantial bodily harm by fracturing a person's bone by an act done with intent to cause only pain will suffer no incremental punishment, even though the person battered is a public officer and the offender battered the public officer in order to influence the action of the officer. *See* Wis. Stat. §§ 940.19(2), 940.20(4). An offender who succeeds in intentionally breaking a police officer's nose but stops short of inflicting "great bodily harm" will suffer no incremental punishment as a result of the officer's status. *See* Wis. Stat. §§ 940.19(3), 940.20(2). These results show that Davison's interpretation would undermine the objective of special circumstances batteries in a number of situations.

¶ 95. A battery is an act causing a degree of bodily injury, whether the act is prosecuted under § 940.19 or § 940.20(1). But the legislature did not wish to treat all pains, all lacerations and broken bones, and all permanent disfigurements equally. It is not merely the underlying act that distinguishes the offenses involved. The circumstances in which the offender commits the act are also important. *State v. Selmon,* 175 Wis. 2d 155, 166, 498 N.W.2d 876 (Ct. App. 1993). The statutes are designed to protect different interests. *See Tappa,* 127 Wis. 2d at 170.

¶ 96. The defendant might argue that many acts of battery will be more severely punished if prosecuted successfully as special circumstances batteries and that subsection (2m) therefore serves to prevent a second charge and punishment under a subsection of § 940.19. In fact, however, misdemeanor battery is normally a

lesser-included offense under §§ 940.20, 940.201, 940.203, 940.205, and 940.207. *Cf. State v. Fitzgerald,* 2000 WI App 55, ¶ 8, 233 Wis. 2d 584, 608 N.W.2d 391. Hence, defendants would not be eligible for multiple convictions in these circumstances because of § 939.66(1), assuming subsection (1) is interpreted to apply to both charged and uncharged offenses. The problem of a true lesser-included offense under the special circumstances batteries was addressed by § 939.66(1) *before* the enactment of subsection (2m).[28]

¶ 97. As a result, we believe that the nature of the proscribed conduct supports the position that the legislature did not intend to preclude prosecution and punishment under both §§ 940.19(6) and 940.20(1).

D. Appropriateness of Multiple Punishments

¶ 98. Often in our multiplicity analyses, consideration of the appropriateness of multiple punishments is informed by our conclusions regarding the nature of the proscribed conduct. *See, e.g., Tappa,* 127 Wis. 2d at 168–170 (overlapping the discussion of the third and fourth factors); *Anderson,* 219 Wis. 2d at 755–56 (same). This is true in the present case. There is no need to repeat extensively the analysis from the previous category.

¶ 99. Because different interests are protected by imposing punishment under both § 940.19 and § 940.20(1), *see Anderson,* 219 Wis. 2d at 756, the legislature could have thought it appropriate to convict and punish a defendant for both offenses arising out of a prisoner's single act of battery.

---

[28] If misdemeanor battery did not require proof of any additional element than the special circumstances battery, it would presumptively create a double jeopardy violation.

¶ 100. There is simply no symmetry between the battery by prisoner statute and the well-understood gradation scheme found in § 940.19. If the legislature sensed that the general battery statute adequately punished and deterred the conduct of battery *in all circumstances,* we doubt that it would have created additional offenses beyond the conduct proscribed under § 940.19.

¶ 101. Wisconsin Stat. § 940.20(1) was passed to provide more severe sanctions for prisoners who commit batteries than for non-prisoners who commit the same batteries. *See C.D.M v. State,* 125 Wis. 2d 170, 175, 370 N.W.2d 287 (Ct. App. 1985). The harm caused by aggravated battery and the harm caused by battery by a prisoner "are significantly different to justify charging them as separate offenses," *Tappa,* 127 Wis. 2d at 169, even though the act generating these disparate harms is the same. In enacting § 940.20(1) on top of § 940.19, the legislature intended to punish two different, albeit overlapping evils. *See C.D.M.,* 125 Wis. 2d at 175 ("The enhanced penalty of [Wis. Stat. § 940.20(1)] is intended to deter batteries in circumstances where the usual penalty may be ineffective.").

¶ 102. Davison contends that the purpose of imposing additional punishment when a battery is committed by a designated actor (*e.g.,* a prisoner) or against a designated victim (*e.g.,* a firefighter) is not undermined by barring multiple punishments. He notes that, under § 940.20(1), any battery by a prisoner is a Class D felony, regardless of the degree of bodily injury caused or the level of intent to cause harm. By contrast, under §§ 940.19(1) and (2), a battery that causes bodily harm is only a Class A misdemeanor, while a battery causing substantial bodily harm is only a Class E felony. Therefore, Davison argues, the statute would still provide for

additional punishment and deterrence, since any battery done by a prisoner would be a Class D felony.[29]

¶ 103. Under Davison's view of § 939.66(2m), however, a prisoner who commits aggravated battery will be exposed to no greater punishment than a non-prisoner who commits this same offense. Hence, the objectives of deterrence and extra protection would be undermined. The legislature may of course enact Davison's interpretation, but we are not convinced that it did.

¶ 104. Wisconsin courts have previously valued the deterrence created by separate punishments for different offenses when the legislature was not clear whether multiple punishments were permitted. In *Grayson*, for example, we reasoned that multiple punishment for each 120–day period of continual failure to pay child support was essential for deterring long-term failure to provide support in accordance with the felony non-support statutes. *Grayson*, 172 Wis. 2d at 166. In *State v. Hamilton*, 146 Wis. 2d 426, 432 N.W.2d 108 (Ct. App. 1988), the court of appeals allowed multiple punishment under Wis. Stat. § 943.37(3) for each item a defendant possesses with altered or removed serial numbers, in order to make the criminal risk concomi-

[29] The court of appeals noted this argument and concluded: "Consequently, since the enhancer is the status of the actor in § 940.20 and not the degree of the crime, there is not an ambiguity problem between the statutes with regard to the word 'battery.'" *State v. Davison*, 2002 WI App 109, ¶ 18, 255 Wis. 2d 715, 647 N.W.2d 390. We are unsure exactly what the court of appeals meant by this statement, but we imagine it is congruent with Davison's argument. However, it is precisely because the enhancer is a status-based consideration that shows how § 940.20(1) embodies an entirely different interest than the general battery statute.

tant with the potential criminal profit. *Id.* at 441. If additional punishment for battery by prisoner is not allowed in cases of aggravated battery, then the greater evil of aggravated battery *by prisoner* is not punished proportionally to that greater evil. *See Grayson,* 172 Wis. 2d at 167 ("The longer the period of nonpayment, the greater the harm that is inflicted.").

¶ 105. Inability to prosecute and punish under both statues permits an offender, at least in some circumstances, to inflict a greater degree of harm without fear of additional punishment. This odd result is similar to one recognized by this court in *Anderson.* In explaining why multiple punishments under the bail jumping statute were appropriate when a defendant violated different and distinct terms of his bail, we explained:

> Without imposing multiple punishments for violating the different terms of bail, a defendant may even be encouraged to violate multiple terms, knowing that the punishment will be no different whether he or she violates one or all terms of bail. It is difficult to believe that the legislature intended this result.

*Anderson,* 219 Wis. 2d at 756.

¶ 106. In summary, considering the appropriateness of multiple punishments for committing both aggravated battery and battery by prisoner, we do not perceive the policy basis upon which the legislature would have intended to preclude multiple convictions for these offenses in a single prosecution.

## V. CONCLUSION

¶ 107. Applying our four-factor examination of legislative intent to this multiplicity challenge, we conclude that Davison has failed to meet his burden of

persuasion. Aggravated battery and battery by prisoner are clearly not "the same offense" as a matter of law. Davison has failed to rebut the presumption in this specific situation that the legislature intended to authorize multiple prosecutions and punishments for these two offenses.

¶ 108. If we were focusing solely on the text of subsection (2m), we would find this to be a much closer case, for we would not be seeking legislative intent outside the text of the statute. We are informed, however, by our decision in *Grayson,* where we said: "If an express legislative intent or the absence of ambiguity were the benchmark against which the issue of the allowable unit of prosecution had to be decided, consideration of the matter would be limited to the first two factors. The last two factors would not then be relevant." *Grayson,* 172 Wis. 2d at 161.

¶ 109. In applying the more expansive rules of statutory interpretation we have traditionally employed in multiplicity cases, we are convinced not only that Davison has not met his burden, but also that the legislature very likely intended to authorize multiple punishments on these facts. The disturbing inconsistency within § 939.66 if Davison's literal interpretation of subsection (2m) were adopted, the compelling legislative history of subsection (2m), the legislative motive for the proscribed conduct under the ordinary and special circumstances battery statutes, and the appropriateness of punishing more than one offense lead us to conclude that the legislature has *not* clearly intended to prohibit multiple punishments on these facts.

¶ 110. We have analyzed this case as a single act of battery, because that is the way the case reached us. We are disinclined to abandon the four-part analysis for statutory construction in a multiplicity case on the

record presented here. After all, the facts set out in ¶¶ 5–7 reveal that Davison committed multiple criminal acts of battery over a 45–minute period. Davison caused bodily harm to his wife at different times at different places, resulting in multiple injuries.

¶ 111. Because Davison's multiplicity objection fails on the merits, we need not and do not decide whether, by pleading guilty, he waived his right to raise this claim.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 112. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I would affirm the decision of the court of appeals.

¶ 113. The defendant in the present case was charged with and convicted of two batteries: aggravated battery and battery by a prisoner. Aggravated battery is a battery causing *substantial bodily* harm. It is a Class D felony under Wis. Stat. § 940.19(6). Battery by a prisoner is a battery (by a prisoner) causing *bodily* harm. It is a Class D felony under Wis. Stat. § 940.20(1).

¶ 114. In the present case, everyone agrees that the two offenses are not the same in law. The issue, then, is whether there is a clear legislative intent to prohibit multiple punishments. That is, does the legislature's express bar in Wis. Stat. § 939.66(2m) against multiple punishments for batteries of a less serious or equally serious type apply only to batteries created in Wis. Stat. § 940.19, or does it apply to batteries created in § 940.20 as well? The answer lies in legislative intent. "[T]he question of what punishments are constitutionally per-

missible is no different from the question of what punishment the Legislative Branch intended to be imposed."[1]

¶ 115. On the basis of the language and legislative history of Wis. Stat. § 939.66(2m) and the public policy underlying Wis. Stat. §§ 940.19 and 940.20, I conclude that the legislature clearly expressed its intent that § 939.66(2m) applies to batteries created in § 940.20 as well as batteries in § 940.19. Therefore, multiple pun-

---

[1] *Missouri v. Hunter,* 459 U.S. 359, 368 (1983) (quoting *Albernaz v. United States,* 450 U.S. 333, 344 (1981)).

The majority opinion is very lengthy and addresses numerous issues. My failure to comment on all aspects of the opinion should not be interpreted as my agreeing with them.

For example, the majority opinion discusses multiplicity and double jeopardy at length, but I am not sure what conclusion it reaches about their relationship and what difference it makes in this case. The "constitutional law" applicable in this case is as follows: When multiple punishments in a single prosecution are not for the same offense (in law and fact), a presumption arises that the legislature intended to permit multiple punishments. The presumption can be rebutted by clear legislative intent to the contrary. *State v. Derango,* 2000 WI 89, ¶ 30, 236 Wis. 2d 721, 613 N.W.2d 833.

As another example, in ¶ 65 the majority opinion states that a literal reading of Wis. Stat. § 939.66(2m) "is inconsistent with the general intent of § 939.65, which permits multiple charges under different statutes for a single act and may result in multiple convictions." I doubt there is an inconsistency. A literal reading of § 939.66(2m) does not prohibit multiple charges. Rather, it only prohibits multiple convictions. The majority opinion in ¶¶ 66–67 intimates that the State may avoid all of the restrictions in § 939.66 by simply charging the multiple offenses at the outset. I do not understand this reasoning. The issue of charged versus uncharged offenses was not raised or discussed by the parties.

ishments for aggravated battery, that is, a battery causing *substantial bodily* harm, a Class D felony under Wis. Stat. § 940.19(2), and battery by a prisoner, that is, a battery causing *bodily* harm, a Class D felony under Wis. Stat. § 940.20(1), are prohibited.

¶ 116. I examine first the applicable rules of statutory interpretation, and then in turn the language of the statute, the legislative history, and the legislative purpose.

I

¶ 117. The generally accepted rules for discerning legislative intent should apply in this case as they do in any other case. Legislative intent is legislative intent, regardless of the context in which it is examined. The four factors upon which the majority opinion relies represent a restatement of the traditional rules for discerning legislative intent.[2]

¶ 118. The majority suggests that it is bound by *State v. Grayson,* 172 Wis. 2d 156, 493 N.W.2d 23 (1992), to apply a different, more expansive form of statutory construction in the present case.[3] The majority's citation to *Grayson,* however, is inapplicable. In *Grayson* the accused urged that because the plain language of

---

[2] *State v. Bohacheff,* 114 Wis. 2d 402, 410, 338 N.W.2d 466 (1983), instructs: "To determine whether or not the legislature intends multiple convictions . . . we look to the language of the statute, the nature of the proscribed conduct, and the appropriateness of multiple punishments. *We are also aided in our search for legislative intent by canons of statutory construction.*" (emphasis added). In keeping with traditional rules of statutory interpretation, a fourth factor, legislative history, appears in cases in which it was available.

[3] Majority op., ¶¶ 108, 110.

the statute was ambiguous, the court should apply the rule of lenity. The *Grayson* court concluded that the rule of lenity was not appropriately invoked when although the plain language of the statute was ambiguous, resorting to traditional rules of statutory interpretation enabled the court to discern a reasonable, common-sense interpretation of legislative intent.[4] The *Grayson* case did not determine that multiplicity analysis requires some alternative rules of statutory construction.

## II

¶ 119. The first place to look for legislative intent is in the language of the statute.[5] In Wis. Stat. § 939.66(2m) the legislature expressly stated its intent to prohibit multiple punishments for certain batteries as follows: If an accused is convicted of battery, the

---

[4] "[B]ecause the legislature failed to expressly state the allowable unit of prosecution under sec. 948.22, Stats., this court must determine its intent as to that issue according to 'a common sense reading of the statutes' that will give effect to 'the object of the legislature' and produce a result that is 'reasonable and fair to offenders and society.' ... To determine legislative intent we will examine the four factors ...." *State v. Grayson,* 172 Wis. 2d 156, 162, 493 N.W.2d 23 (1992) (quoting *State v. Tappa,* 127 Wis. 2d 155, 170–71, 378 N.W.2d 883 (1985)).

[5] For discussions of plain meaning and the rules of statutory interpretation in Wisconsin, see *Fox v. Catholic Knights Ins. Soc'y,* 2003 WI 87, 263 Wis. 2d 208, 665 N.W.2d 181; *State v. Byers,* 2003 WI 86, 263 Wis. 2d 113; 665 N.W.2d 729 (Abrahamson, C.J., concurring; Crooks, J., dissenting); *Bruno v. Milwaukee County,* 2003 WI 28, 260 Wis. 2d 633, 660 N.W.2d 656; *State v. Delaney,* 2003 WI 9, ¶¶ 38–40, 259 Wis. 2d 77, 658 N.W.2d 416 (Abrahamson, C.J., dissenting); *State v. Sample,* 215 Wis. 2d 487, 508, 573 N.W.2d 187 (1998) (Abrahamson, C.J., concurring).

accused may not be punished for a battery "which is a less serious or equally serious type of battery than the one charged."[6] In Wis. Stat. §§ 940.19 and 940.20, the legislature labeled both offenses of which the defendant was convicted as batteries and established that both batteries are equally serious types of battery; both are class D felonies, each carrying a maximum penalty of 10 years.

¶ 120. *It is rare that the plain language of a statute covers the fact situation in issue as clearly as it does in this case.* According to the plain meaning of Wis. Stat. § 939.66(2m), the legislature plainly intended not to permit conviction and punishment for both batteries. Indeed, the majority opinion concedes that based on the "plain language" of Wis. Stat. § 939.66(2m), "one would normally conclude that the legislature intended that the defendant not be convicted of both crimes."[7]

¶ 121. Despite this conclusion, the majority decides that the statute is ambiguous by reading Wis. Stat. § 939.66(2m) in the context of other statutes and case law, much of which supports the literal reading of the statutory language and some of which supports alternative readings.[8]

---

[6] The statute is quoted at ¶ 10 n.6 and ¶ 66 of the majority opinion.

[7] Majority op., ¶ 58.

[8] *See* majority op., ¶ 74. Apparently the majority opinion is using a rule of interpretation that counterbalances the plain meaning rule: When separate statutes are read together, rather than in isolation, a plain meaning statute may be rendered ambiguous. *State v. Chavez,* 175 Wis. 2d 366, 370–71, 498 N.W.2d 887 (Ct. App. 1993).

Almost every rule of interpretation can be countered by an opposing rule. For the lead article discussing the "thrust and parry" of contradictory rules of statutory interpretation, see

¶ 122. I applaud the majority's decision to test the "plain meaning" of the statute in this way and do not dispute that there is some support for an alternative reading. Yet it should not get lost in the majority's discussion of ambiguity that the support for the literal reading of § 939.66(2m) greatly overwhelms any support for a contrary reading of the statute.

## III

¶ 123. The majority opinion then turns to the legislative history, the context, and the purpose of the statute to clarify the ambiguity it created.[9] It is clear on examining these factors that the legislature did not intend the multiple punishments imposed in this case.

¶ 124. The majority opinion examines the 1985 proposed amendment to Wis. Stat. §§ 939.66 adopting subsection (2m). The majority concludes that the 1985 amendment does "not reveal[] an intent to apply Wis. Stat. § 939.66(2m) beyond § 940.19."[10] I disagree.

¶ 125. In 1985, in response to *State v. Richards,* 123 Wis. 2d 1, 365 N.W.2d 7 (1985), the legislature considered an amendment to Wis. Stat. § 939.66 to bar multiple punishments for batteries. The *Richards* case involved only the first two of the three subsections of § 940.19. The Legislative Reference Bureau's analysis of the proposed amendment noted that although "a

Karl N. Llewellyn, *Remarks on the Theory of Appellate Decisions and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand. L. Rev. 395 (1950).

[9] The court's usual statement is that if a statute is ambiguous, the court examines the history, context, subject matter and object of the statute to discern legislative intent. *See Heaton v. Larsen,* 97 Wis. 2d 379, 394, 294 N.W.2d 15 (1980).

[10] Majority op., ¶ 82.

number of different statutes" proscribe battery and that the potential penalties vary depending "on the circumstances surrounding the act, the actor, the victim and the harm suffered by the victim, the proposed amendment affects only "the first 2 levels of battery," referring to subsections (1) and (2) of Wis. Stat. § 940.19.[11] That proposed amendment was not adopted, however.

¶ 126. The proposed amendment that was eventually adopted was silent in language and legislative history regarding any intent to limit the application of § 939.66(2m) to § 940.19.[12] Obviously, a strong inference can be drawn that by not adopting the first proposed amendment with its limitation, the legislature refused to limit § 939.66(2m) to the first two subsections of § 940.19. Nonetheless, the majority opinion projects, without any supporting documentation or reasoning, that the defeated version and the adopted version "were anticipated to have the same narrow substantive effect."[13]

¶ 127. In 1994, additional amendments were proposed to Wis. Stat. §§ 939.66(2m) and 940.19.[14] The Legislative Reference Bureau's analysis of the bill that was put before the entire legislature expressly includes within the crime of "battery," those batteries committed under "special circumstances such as when the victim is a peace officer."[15] Battery to a police officer was not then (and is not now) set forth in § 940.19. Rather, battery to a police officer is set forth in § 940.20, entitled "Battery: Special Circumstances." Why does the Legislative Ref-

---

[11] Quoted at majority op., ¶ 81.

[12] *See* majority op., ¶ 80.

[13] *See id.,* ¶ 82.

[14] *See id.,* ¶ 84–89.

[15] Quoted at majority op., ¶ 88.

202

erence Bureau's analysis of an amendment to § 939.66(2m) refer to battery against a police officer, if the proposed amendment to § 939.66(2m) does not affect § 940.20?

¶ 128. Furthermore, as the majority opinion carefully notes, two Legislative Council memoranda explaining the 1994 amendments included the texts of both Wis. Stat. §§ 940.19 and 940.20. Why does the Legislative Council, on two occasions, include the text of § 940.20, along with the text of § 940.19, if the proposed amendment to § 939.66(2m) affects only § 940.19, not § 940.20?

¶ 129. It is rare to get a clearer expression of legislative intent from legislative history. This legislative history unambiguously demonstrates that the legislature was advised that the 1994 amendment to Wis. Stat. § 939.66(2m) affects batteries set forth in both Wis. Stat. §§ 940.19 and 940.20. Applying the approach courts take to the legislative process, we assume that the legislature read and understood the materials presented and adopted the amendment understanding that § 939.66(2m) affects batteries set forth in both §§ 940.19 and 940.20. The majority opinion, in contrast, shrugs off this conclusion, stating, "Nonetheless, we believe the stronger inference to be drawn from the legislative history is that the legislature intended to apply subsection (2m) only to § 940.19 and did not intend to prevent multiple cumulative punishments for a special circumstances battery."[16]

## IV

¶ 130. Finally, the majority opinion turns to the purpose of Wis. Stat. § 939.66(2m), that is, to the policy

---

[16] Majority op., ¶ 90.

considerations underlying the statute, by exploring the nature of the proscribed conduct and the appropriateness of multiple punishments. The majority concludes that the legislature intended to impose multiple punishments because different interests are protected under Wis. Stat. §§ 940.19 and 940.20(1), and that if the legislature concluded that the general battery statute adequately punished the conduct of battery in all circumstances it would not have created additional battery offenses beyond § 940.19. I disagree. The statutes do not support this conclusion.

¶ 131. The majority is correct that the legislature intended to increase the penalty for certain batteries depending on the "special circumstances" of the battery. The legislature's intent to increase the penalties applies, however, only to batteries inflicting "bodily injury," the first level of harm.

¶ 132. Battery committed without any "special circumstances" is a Class A misdemeanor subject to a penalty of nine months. In contrast, Wis. Stat. § 940.20(1) makes it a Class D felony for a prisoner to commit a battery inflicting "bodily injury." Increased penalties for batteries committed under other "special circumstances" in § 940.20 similarly apply only to those batteries that inflict bodily injury, not to those that inflict more serious injuries.[17] The legislature could have increased the penalty for batteries under these "special circumstances" that inflicted "substantial bodily

---

[17] See also Wis. Stat. §§ 940.201 (increased penalty for battery to a witness causing bodily harm), 940.203 (increased penalty for battery to a judge causing bodily harm), 940.205 (increased penalty for battery to a department of revenue employee causing bodily harm), 940.207 (increased penalty for battery to a department of commerce or a department of workforce development employee causing bodily harm).

injury" or "great bodily harm" or "substantial risk of great bodily harm," but it did not.[18]

¶ 133. Contrary to the majority opinion, I read these statutes to express a legislative purpose to deter batteries causing the least serious harm and committed under "special circumstances" by dramatically increasing the penalty for bodily injury from nine months (a Class A misdemeanor) to ten years (a Class D felony), not to create avenues for imposing multiple punishments for equally serious or less serious batteries. The legislature concluded that the significant prison penalties in Wis. Stat. § 940.19 for *equally serious* or more serious bodily injuries would be a sufficient deterrent under any circumstance.[19]

¶ 134. In sum, the majority opinion offers little, if any, trustworthy evidence clearly contradicting the plain language of Wis. Stat. § 939.66(2m) in which the legislature barred multiple punishments for batteries that are less serious or equally serious.[20]

¶ 135. For the reasons set forth, I dissent.

---

[18] *Compare* Wis. Stat. § 940.195.

[19] *See State v. Gordon,* 111 Wis. 2d 133, 141, 330 N.W.2d 564 (1983) ("The legislature apparently adopted sec. 939.66(1) because the penalty set by the legislature for the greater offense takes into account the fact that the defendant has also committed a lesser-included offense. Remington and Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 546.").

[20] The majority suggests that its decision in the present case is, at least in part, motivated by the bad acts committed by the defendant. *See* majority op., ¶ 110. When balancing competing arguments about the proper construction of the law it is essential that the defendant's blameworthiness not tip the balance.

¶ 136. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.