UNITED STATES of America, Plaintiff–Appellee,

v.

Freddie TAYLOR, Defendant–Appellant.

No. 01–10104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2003.

Filed March 20, 2003.

Jeffrey G. Buchella, Tucson, AZ, for the defendant-appellant.

Christina M. Cabanillas, Assistant U.S. Attorney, Tucson, AZ, for the plaintiff-appellee.

Before BEEZER, THOMAS, and CLIFTON, Circuit Judges.

## OPINION

BEEZER, Senior Circuit Judge.

Freddie Taylor appeals his conviction for (1) conspiracy to murder a federal confidential informant, Alzinnia Keyes, in violation of 18 U.S.C. §§ 1111, 1114, 1117 (1998); (2) aiding and abetting murder of a federal confidential informant in violation of 18 U.S.C. §§ 1111, 1114, 2 (1998); (3) witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A) (1998); and (4) accessory after the fact in violation of 18 U.S.C. § 3 (1998).

Taylor raises numerous challenges on direct appeal, including the argument that the district court erred in not dismissing Taylor's accessory after the fact conviction. We VACATE Taylor's accessory after the fact conviction in this opinion and AFFIRM the district court on all other issues in a separate unpublished memorandum disposition.

## I

Alzinnia Keyes, a federal confidential informant for the Drug Enforcement Administration (DEA), was shot to death in Tucson, Arizona. Keyes was assisting the DEA, under the supervision of DEA agent Robert Genualdi, in the cocaine trafficking investigation and prosecution of Terile Williams. On January 23, 1998, Williams delivered approximately two ounces of crack cocaine to Keyes, for which Williams was arrested and charged in district court with felony distribution of cocaine. Williams was in federal custody awaiting trial on federal drug charges when Keyes was shot. Keyes would have been a witness against Williams at his trial.

Freddie Taylor and Michael Waggoner were friends with Williams.[1] While Williams was in custody pending his distribution of cocaine trial, Waggoner told Williams's sister, Delisa Wilkes: "tell [your] brother not to worry, because [I am] going to get the bitch." Keyes was shot to death within a week of Waggoner's statement to Wilkes.

---

1. Waggoner and Taylor were originally co-defendants. Waggoner moved to sever his trial and the motion was granted.

Eyewitnesses testified that on the night of Keyes's shooting, Taylor and Waggoner drove to the scene of the shooting together. Eyewitnesses observed Waggoner shooting Keyes and Taylor driving Waggoner away from the scene of the crime.

After the shooting, someone called 911, and an officer was dispatched to the scene. Keyes tried to tell the officer to get a special agent with a last name that started with the letter G, but the officer could not understand what Keyes was trying to say. The paramedics arrived soon after the officer arrived. Paramedic Diane Benson testified that Keyes grabbed Benson's arm and told Benson to write down some information; Keyes wanted Benson to call Agent Genualdi and tell him that Terile's people did this.

Taylor was convicted for (1) conspiracy to murder a federal informant, (2) aiding and abetting murder of a federal informant, (3) witness tampering and (4) accessory after the fact.

## II

Taylor claims that the district court erred in refusing to dismiss his accessory after the fact conviction because the facts supporting Taylor's accessory after the fact conviction are the same facts supporting his conviction for aiding and abetting. Although the district court expressed concern about the accessory after the fact conviction, the district court did not set it aside; instead, the district court imposed a concurrent sentence so that Taylor's accessory after the fact conviction would not subject Taylor to any additional punishment than that already imposed.

We review the district court's interpretation of a statute *de novo*. *United Dairymen of Arizona v. Veneman*, 279 F.3d 1160, 1163 (9th Cir.2002).

In response to Taylor's motion for a new trial and sentencing, the district court stated:

I am troubled as to the basis to convict someone of accessory after the fact when they are convicted of aiding and abetting a murder and participating in a conspiracy to commit murder and then failing to report their knowledge of the matter to law enforcement afterwards.... If I were to set aside the verdict concerning accessory after the fact, it wouldn't be for lack of evidence concerning that[;] it would be because it would be something along the lines of ... an additional impermissible count in light of what the defendant was found guilty of.... [O]therwise, in every case, robbery—you name it—everybody who was a principal or an accomplice to the crime could also be charged with being an accessory after the fact because they don't turn themselves in or report the other people with whom they acted.

The district court's statement correctly acknowledges the tension between committing a crime as a principal and committing the offense of accessory after the fact. The Ninth Circuit has not specifically precluded a defendant from being convicted as both (1) a principal who has aided and abetted or conspired and (2) an accessory after the fact who has only assisted afterwards, but like the district court, the Ninth Circuit has articulated the distinction between the situations in which the two types of offenses arise:

[T]here is a critical difference between the nature of the crime of being an accessory after the fact and the nature of the crime of being either an aider and abettor or a conspirator. One who acts as an accessory after the fact does not participate in the commission of the primary offense. Instead, an accessory is one who provides assistance to the offender by helping him to avoid apprehension or prosecution after he has already committed an offense.

*United States v. Graves,* 143 F.3d 1185, 1190 (9th Cir.1998).

The confusion caused by the accessory after the fact offense under 18 U.S.C. § 3 arises from the fact that the escape phase or "get-away" phase of a crime satisfies the plain language of the accessory after the fact statute. The statute states: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 18 U.S.C. § 3. When someone drives a get-away car, that person satisfies the plain language of the accessory after the fact statute because that person is "assist[ing] the offender in order to hinder or prevent his apprehension."

We have held, however, that the escape phase of a crime is still part of the commission of the crime. *See United States v. Dinkane,* 17 F.3d 1192, 1200 (9th Cir.1994) (holding that the defendant, who drove the getaway car in connection with a bank robbery, participated in the escape phase of the underlying crime, making him guilty of aiding and abetting in the bank robbery). Here, Taylor assisted in the escape of Waggoner, the offender. As a result, Taylor was found guilty of aiding and abetting; Taylor is an offender punishable as a principal to the murder. *See* 18 U.S.C. § 2(a)(stating "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal").

█ We conclude that Taylor should not be punished as an accessory after the fact, even though he assisted in preventing his own apprehension and the apprehension of his co-offender. Under 18 U.S.C. § 3, the offense of accessory after the fact only occurs when a person assists an offender; the person committing accessory after the fact is not the "offender" himself. To interpret § 3 otherwise would lead to the absurd result of subjecting every principal to an accessory after the fact charge.

The statutory scheme reinforces this interpretation of whether individuals responsible for the escape phase of a crime can be held responsible as accessories after the fact. The statute prohibiting aiding and abetting punishes the aider and abettor as a principal to the crime. 18 U.S.C. § 2. The statute prohibiting accessory after the fact distinguishes between principals (who are actively involved in the commission of the crime), and accessories after the fact (who only provide aid after the commission of the crime); the statute limits the punishment for accessories after the fact to no more than half of the maximum punishment prescribed for the underlying offense. 18 U.S.C. § 3.

Because Taylor participated in the escape phase of the shooting, he is liable as a principal. *Dinkane,* 17 F.3d at 1200; 18 U.S.C. § 2. Although the evidence is sufficient to show that Taylor violated the plain language of the accessory after the fact statute, the statute does not apply to Taylor given that he was found guilty as a principal to the crime. *See United States v. Barlow,* 470 F.2d 1245, 1252–53 (D.C.Cir.1972) (stating that the very definition of the accessory after the fact offense requires that the crime not be in progress when assistance is rendered because "he who renders assistance would aid in the commission of the offense and be guilty as a principal").

We vacate the sentence imposed on Taylor upon conviction for accessory after the fact.[2]

---

**2.** We remand for resentencing because Taylor's 180 month accessory after the fact conviction and sentence should be removed from the judgment of the district court.

## III

We affirm the district court on the remaining issues, which are discussed in an unpublished memorandum disposition filed concurrently with this opinion.

REMANDED.