COURT OF APPEALS
DECISION
DATED AND FILED

May 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP432-CR**

Cir. Ct. No. **2018CF41**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

EVAN T. OUNGST,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Iron County: KEVIN G. KLEIN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Evan T. Oungst appeals from a judgment convicting him, upon his guilty pleas, of second-degree reckless homicide by

omission and multiple counts of aiding a felon, all as a party to the crime, and four counts of manufacture or delivery of prescription drug.[1]  He also appeals from the circuit court's order denying his motion for postconviction relief.  Oungst argues that his convictions for the homicide and for aiding a felon—which were based on his efforts to help his four codefendants evade detection for the homicide—were multiplicitous.  Thus, he claims that his convictions and sentences for aiding a felon should be vacated.

¶2　　Under Wisconsin's established test for multiplicity claims, Oungst's argument fails, as his convictions are not the same in fact or in law and the Wisconsin Legislature did not clearly intend to prohibit convictions for both crimes under the circumstances.  We affirm.

## BACKGROUND

¶3　　The facts in this case are undisputed and taken from the amended criminal complaint and preliminary hearing testimony.  In December 2017, Oungst, his four codefendants, and the victim drove in a minivan to a remote location near Mercer, Wisconsin, where the victim was beaten and shot multiple times.  Oungst and his codefendants then hid the victim's body.  According to the complaint, Oungst was not the one to pull the trigger.  Based on witness statements, all those involved, including the victim, knew during the drive that "this was to be [the victim's] last ride."  After the homicide and then hiding the corpse, Oungst and his codefendants returned to the van, and Oungst provided directions to the driver to return to Park Falls, Wisconsin.

---

[1]  The convictions for manufacture and delivery of prescription drugs are not relevant to this appeal.

¶4    A few days later, Oungst went to a codefendant's home and took from the home a pair of shoes belonging to the codefendant. The codefendant had been wearing them on the day of the murder, and the shoes were later found by law enforcement in the back of Oungst's truck. Oungst returned again to the same codefendant's home to collect a sweatshirt and a jacket, presumably also worn by the codefendant on the day of the homicide, which were also found in Oungst's truck. Finally, Oungst drove another of his codefendants to Crandon, Wisconsin, after law enforcement began investigating the murder.

¶5    In Iron County case No. 2018CF10, the State charged Oungst and his codefendants in a joint criminal complaint with first-degree intentional homicide and hiding a corpse, both as a party to the crime (the homicide case). Later, in Iron County case No. 2018CF41, the State charged Oungst with nine counts of harboring or aiding a felon, all counts as a party to the crime (the present case). The charges in the present case were based on Oungst's acts in helping his codefendants avoid detection by law enforcement after the murder by: (1) giving directions to return to Park Falls following the homicide (one count for each codefendant); (2) taking the shoes from one codefendant's home; (3) concealing the shoes in his truck; (4) taking the clothing from the same codefendant's home; (5) concealing the clothing in his truck; and (6) transporting another codefendant to Crandon, Wisconsin.

¶6    The homicide case and the present case were resolved by a global plea agreement. In the homicide case, Oungst pled guilty to second-degree reckless homicide by omission as a party to the crime. In the present case, Oungst pled guilty to seven counts of harboring or aiding a felon, as a party to the crime, and four counts of delivering a prescription drug. The circuit court sentenced

3

Oungst to a global sentence of twenty-two years' initial confinement followed by twenty years' extended supervision.

¶7 Oungst filed a motion for postconviction relief in the present case only. He argued that his convictions for aiding a felon were multiplicitous with the second-degree reckless homicide count in the homicide case, and he requested that the circuit court vacate and dismiss his convictions for aiding a felon. In response, the State argued that Oungst's claim had been forfeited by virtue of the guilty plea waiver rule, that any claim of ineffective assistance of counsel on that basis would fail, and that the charges to which Oungst pled were not multiplicitous.

¶8 The circuit court denied Oungst's motion. It concluded that the charges in the present case were not multiplicitous because the charges were "very specifically based on his aid to others," not on acts related to the homicide. The court also determined that Oungst's claims were barred by the guilty plea waiver rule. Oungst appeals.

## DISCUSSION

¶9 On appeal, Oungst reasserts his multiplicity claim.[2] "The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and its parallel provision in the Wisconsin Constitution, Article I, Section 8(1), prohibit multiple punishments for the same offense." *State v. Ziegler*, 2012 WI 73, ¶59,

---

[2] In its response brief, the State notes that it does not renew its argument that Oungst's claim is barred by the guilty plea waiver rule. Likewise, the State also does not renew its assertion that Oungst's claim could only be raised within the rubric of ineffective assistance of counsel. Accordingly, we will address these issues no further.

342 Wis. 2d 256, 816 N.W.2d 238. "When a defendant is charged in more than one count for a single offense, the counts are deemed impermissibly multiplicitous." *Id.* "Whether a multiplicity violation exists in a given case is a question of law subject to independent appellate review." *State v. Multaler*, 2002 WI 35, ¶52, 252 Wis. 2d 54, 643 N.W.2d 437.

¶10 We review multiplicity claims pursuant to a well-established, two-part methodology. *Ziegler*, 342 Wis. 2d 256, ¶60. First, we determine whether the offenses are identical in law and in fact under the "elements-only" test outlined in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Ziegler*, 342 Wis. 2d 256, ¶60. "Under the 'elements-only' test, two offenses are identical in law if one offense does not require proof of any fact in addition to those which must be proved for the other offense." *Id.* Determining whether the two crimes are identical in fact "involves a determination of whether the charged acts are 'separated in time or are of a significantly different nature.'" *State v. Koller*, 2001 WI App 253, ¶31, 248 Wis. 2d 259, 635 N.W.2d 838 (citation omitted). The analysis of whether the acts are of a different nature "is not limited to an assessment of whether the acts are different types of acts. Rather, even the same types of acts are different in nature 'if each requires a new volitional departure in the defendant's course of conduct.'" *Id.* (citations omitted). Even acts that occur mere seconds apart may still be different in nature if the defendant had "sufficient time for reflection between the assaultive acts to again commit himself [or herself]." *Id.* (citation omitted).

¶11 If the offenses are identical in law and in fact, then we presume that the legislature did not intend to permit multiple punishments. *Ziegler*, 342 Wis. 2d 256, ¶61. The State may rebut that presumption only with a clear indication of contrary legislative intent. *Id.* If, however, the offenses are different

in law or in fact, "we are no longer concerned with a double jeopardy violation but instead a potential due process violation." *Id.*, ¶62. We then presume that the legislature intended to permit multiple punishments, and the defendant bears the burden to demonstrate that the offenses are multiplicitous on the ground that the legislature did not intend to approve cumulative punishments. *Id.*

¶12 Once we determine which presumption to apply, we proceed to the second part of the multiplicity analysis to discern legislative intent. *State v. Patterson*, 2010 WI 130, ¶16, 329 Wis. 2d 599, 790 N.W.2d 909. In the second part of the multiplicity analysis, we consider four factors: "(1) all applicable statutory language; (2) the legislative history and context of the statutes; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishments for the conduct." *Ziegler*, 342 Wis. 2d 256, ¶63.

¶13 In this case, we agree with the State and the circuit court that the charges to which Oungst pled guilty are not multiplicitous: the charges are different in fact and in law, and Oungst fails to establish that the legislature did not intend cumulative punishments. *See State v. Davison*, 2003 WI 89, ¶¶43-45, 263 Wis. 2d 145, 666 N.W.2d 1. First, Oungst does not dispute that the offenses of aiding a felon and second-degree reckless homicide as charged in this case are different in law and in fact.[3] As to the differences in law, the parties are correct that each charge has separate elements with no overlap. *Compare* WIS. STAT.

---

[3] In his brief-in-chief, Oungst fails to address or apply the two-part methodology for multiplicity claims. In his reply, Oungst notes that "[t]he State argues the defendant's offense of second-degree reckless endangerment is different both in fact and in law than the offenses of aiding a felon in the other relevant counts. Defendant cannot argue otherwise."

§ 940.06(1) (2021-22),[4] *and* WIS JI—CRIMINAL 1060A (2015), *with* WIS. STAT. § 946.47, *and* WIS JI—CRIMINAL 1790 (2015); *see also* **Davison**, 263 Wis. 2d 145, ¶41.

¶14 The crimes are also different in fact. The charge of second-degree reckless homicide stems from Oungst's participation in the scheme to kill the victim, while the aiding a felon charges stemmed specifically from Oungst's actions taken to help others avoid detection, which were separate in time and required volitional departures in conduct. *See* **Koller**, 248 Wis. 2d 259, ¶31. After the homicide, Oungst had time for reflection, and he consciously chose to take the actions that comprised the charges of aiding a felon. Oungst could have decided not to return to the vehicle and leave with his codefendants. Oungst does not suggest that he was forced to return to the vehicle and to provide directions to flee the crime scene. He made a choice to do so. Further, Oungst also had sufficient time for reflection in the days after the homicide, when he continually engaged in volitional conduct meant to assist his codefendants in avoiding detection by hiding or moving evidence.

¶15 We also agree with the State that the second-degree reckless homicide charge was predominantly a crime of omission in Oungst's case—as his conviction was based on his failure to stop his codefendants from murdering the victim—while the aiding a felon charges involved acts of specific volitional conduct. *See generally* **State v. Steinhardt**, 2017 WI 62, 375 Wis. 2d 712, 896

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

N.W.2d 700 (recognizing differences of omission and commission as separate acts). Thus, the charges are different in law and fact.

¶16   All that remains, then, is to determine whether Oungst has met his burden to rebut the presumption that the legislature intended to permit multiple punishments. The crux of Oungst's argument on appeal is that "one cannot be both a principal to a felony offense and also one who aids his [codefendant] in escaping liability for the same felony conduct." He asserts the purported "obvious and commonsense reality that one who aids a felon must become involved in the criminal activity *after* the original felony was committed."

¶17   In support of his position, Oungst relies on *United States v. Taylor*, 322 F.3d 1209 (9th Cir. 2003). In that case, Taylor was convicted of both aiding and abetting a murder of a confidential informant and being an accessory after the fact for driving the shooter from the scene. *Id.* at 1211-12. In vacating Taylor's sentence for accessory after the fact, the court concluded that "Taylor should not be punished as an accessory after the fact, even though he assisted in preventing his own apprehension and the apprehension of his co-offender" because "accessory after the fact only occurs when a person assists an offender; the person committing accessory after the fact is not the 'offender' himself. To interpret [18 U.S.C. § 3 (1998)] otherwise would lead to the absurd result of subjecting every principal to an accessory after the fact charge." *Taylor*, 322 F.3d at 1212. The court further determined "that the escape phase of a crime is still part of the commission of the crime." *Id.*

¶18   According to Oungst, although *Taylor* is "not binding precedent" in this state, the Wisconsin statute is "no different" from 18 U.S.C. § 3, as "the purpose of the 'aiding a felon' statute is to punish those who, while not involved in

the original felony, take[] steps to allow the original felon to avoid arrest." Oungst argues that Wisconsin's "aiding a felon" statute is "interchangeable" with the federal "accessory after the fact" statute.[5]

¶19 We disagree that the ***Taylor*** court's holding requires reversal in this case. First, we are not bound by ***Taylor***, as "decisions by the federal courts of appeal have only persuasive value to this court." *See* **State v. Schultz**, 2020 WI 24, ¶47, 390 Wis. 2d 570, 939 N.W.2d 519. Second, as we have already determined, Oungst's convictions for aiding a felon and second-degree reckless homicide are different in law and, importantly, in fact. As noted above, Oungst's convictions for aiding a felon were not related to his participation in the homicide; the convictions were based on aiding his codefendants to avoid detection after the homicide occurred.

¶20 Third, Oungst relies on our supreme court's decision in **State v. Rundle**, 176 Wis. 2d 985, 500 N.W.2d 916 (1993), in support of his position that the ***Taylor*** court's reasoning should apply in this state. However, ***Rundle*** does not hold that Wisconsin's "aiding a felon" statute and the federal "accessory after the fact" statute are "interchangeable." ***Rundle*** also does not hold that an individual cannot be the principal charged as a party to the crime and then also be charged for later aiding his or her codefendants to avoid detection by law enforcement. Instead, the ***Rundle*** court observed that the state's allegation that the defendant

---

[5] 18 U.S.C. § 3, the federal accessory after the fact statute, provides: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his [or her] apprehension, trial or punishment, is an accessory after the fact." WISCONSIN STAT. § 946.47(1)(a) provides that whoever "[w]ith intent to prevent the apprehension of a felon, harbors or aids him or her," commits the offense of harboring or aiding a felon.

withheld information "seems more consistent with a theory that the defendant was an accessory after the fact than with a claim that he assisted or encouraged the [child] abuse as it was occurring." ***Rundle***, 176 Wis. 2d at 1006-07. Oungst has presented no other legal support for his belief that the Wisconsin Legislature intended WIS. STAT. § 946.47(1)(a) and 18 U.S.C. § 3 to be read as identical in scope and purpose.

¶21 Oungst also provides no support for his claim that the Wisconsin Legislature did not intend to permit multiple punishments under these circumstances. First, based on the statutory language, there is no "clear legislative intent" within the language of WIS. STAT. § 940.06 or WIS. STAT. § 946.47(1)(a) that would suggest that the legislature intended to prohibit convictions for both of these offenses at one time. *See **Davison***, 263 Wis. 2d 145, ¶44; *see also **State v. Moffett***, 2000 WI 130, ¶19, 239 Wis. 2d 629, 619 N.W.2d 918 (observing that prosecutors generally have broad authority to charge under multiple statutes if an act forms the basis for a crime punishable under more than one statutory provision). Oungst does not argue to the contrary. Second, neither party points us to any legislative history or context that provides any indication of legislative intent against cumulative punishments for the two crimes.

¶22 The third factor—the nature of the proscribed conduct—"requires us to look at the nature of the conduct and ask whether the conduct is separated in time or different in nature." ***Steinhardt***, 375 Wis. 2d 712, ¶33. In other words, we look back to the first part of the multiplicity analysis. *See **State v. Anderson***, 219 Wis. 2d 739, 755-56, 580 N.W.2d 329 (1998). As discussed above, the charges in the present case and the homicide case required separate and different volitional acts.

¶23 Finally, as to the appropriateness of multiple punishments, we consider whether multiple acts occurred. *Steinhardt*, 375 Wis. 2d 712, ¶34. Here, Oungst argues that the "post-death conduct is a seamless continuation of the criminal action, not conduct by a new criminal actor." According to Oungst,

> [h]ad there been a trial, the State's presentation of evidence would not have abruptly ended with the death of the victim. The relevant evidence would not only have included what happened leading up to [the] death of the victim, but also what took place after his death. Defendant's actions immediately after the offense would have been admissible as evidence of his participation in the homicide offense, including providing directions to the driver of the vehicle from the homicide scene and aiding one or more of his [codefendants] in avoiding arrest

¶24 We disagree that Oungst's conduct did not involve multiple acts. The actions—or, in this case, the omissions—of Oungst with regard to the scheme to kill the victim were completely different from the specific acts related to each count of aiding a felon. Simply because the evidence supporting the charges for aiding a felon could have been admitted to prove that Oungst had consciousness of guilt and assisted his codefendants to avoid his own detection does not mean that the charges are multiplicitous or that the legislature intended that he not be punished separately for aiding his codefendants. Instead, given the lack of clear evidence to the contrary, we conclude that the legislature intended to punish a defendant under these circumstances, both for his or her conduct in committing the crime with his or her codefendants and also for aiding his or her codefendants in escaping or avoiding detection.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11